## ANGLIN *v.* STATE

[No. 498, September Term, 1965.]

*Decided December 13, 1966.*

*Motion for rehearing filed December 23, 1966, denied January 3, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Douglas G. Bottom*, with whom was *Lloyd J. Hammond* on the brief, for appellant.

*Fred Oken, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Frank H. Newell, III* and *Jerome W. Taylor, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore County,* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

The pattern of life of Louis Weiss, a retired automobile dealer who lives near Pikesville in Baltimore County, includes a yearly winter trip to Florida. In 1965 he went seeking the sun during the last week in January. As he was packing to leave, he put in his bureau drawer a charge-plate in his name, which had come to him in the mail unsolicited. He paid a fifteen-year old boy who lived across the street a small fee to check regularly on the condition of his house. Three or four weeks after he had left for Florida, the young man discovered on February 11, 1965, that a rock had been thrown through a window of the Weiss house, entry had been made and the house ransacked. The young man had last inspected the Weiss home on February 9, two days before the discovery of the breaking and entering, and found it in order.

About three o'clock in the afternoon of February 11, the appellant, Anglin, purchased at a men's clothing store in downtown Baltimore about two hundred dollars' worth of clothing, using a charge-plate issued to Louis Weiss. He asked that the merchandise be wrapped so that he could take it with him, as

he was leaving for Florida the next day and could not wait for alterations. Several neckties he had bought were left out of the package inadvertently and soon after Anglin had gone the salesman discovered the ties, telephoned the Louis Weiss residence and apparently talked to the police who were then there investigating the burglary. The police in turn notified the company that had issued the charge-plate.

Some four hours later on the same day, Anglin purchased some one hundred dollars' worth of merchandise at a department store in the Westview Shopping Center on the credit of a charge-plate in the name of Louis Weiss. The clerk who waited on him testified that because the amount of the purchase was in excess of the charge-plate credit limit, she called the company that had issued the plate and then, as a result, engaged Anglin in a conversation intending to delay his departure from the store. When a uniformed police officer appeared soon thereafter, Anglin calmly worked his way towards the door and then suddenly bolted. The policeman chased him into the arms of another policeman who took him into custody on the Westview parking lot.

After the State had produced evidence of these facts before Judge Turnbull, sitting without a jury, Anglin's counsel moved for judgments of acquittal on the four counts of the information on which he was being tried, which charged respectively, one, breaking with intent to commit a felony, two, breaking with intent to steal and carry away the personal goods of another of any value, three, larceny of the charge-plate and, four, receiving the stolen charge-plate. The motion was denied and Judge Turnbull told Anglin that he had the right to testify but could not be compelled to testify, and added, "If you do not testify it can in no way be held against you." To this Anglin replied that he fully understood and assented to the trial judge's statement that he freely and voluntarily declined to testify. Judge Turnbull then found a verdict of guilty on the second count charging breaking with intent to steal goods of any value, and verdicts of not guilty on the other three counts.

The appellant argued in his brief that the evidence was insufficient to permit the trier of fact to convict him of breaking and entering and that there was a reasonable doubt as to whether he was guilty of breaking and entering or of receiving stolen

goods and therefore he could be convicted only of the less serious crime.

The State's brief answers that Anglin's exclusive possession of a recently stolen charge-plate, unexplained by the evidence, properly permitted the trier of fact to infer as a fact, beyond reasonable doubt, that he was the thief who had gained access to the stolen article by breaking into the house in which it was located. In his reply brief, Anglin counters by arguing that the holding of *Griffin v. California,* 380 U. S. 609, 14 L. Ed. 2d 106 (there can be no comment at the trial on the failure of an accused to take the stand) and a suggestion in footnote 37 in *Miranda v. Arizona,* 384 U. S. 436, 468, 16 L. Ed. 2d 694 ("* * * it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation") combine to require that "no penalty be placed on the accused's failure to explain his possession of goods [recently] * * * stolen," and that "no presumption or inference may be drawn from Appellant's failure to explain how he came into possession of the charge plate * * *."

Before dealing with the constitutional issue, we turn to the sufficiency of the evidence and the propriety of the verdict. It has long been established in Maryland that, absent a satisfactory explanation, exclusive possession of recently stolen goods permits the drawing of an inference of fact strong enough to sustain a conviction that the possessor was the thief, or, if the circumstances revealed by the testimony so indicate, that he was the receiver of the stolen goods. *Felkner v. State,* 218 Md. 300 (burglary) ; *Jordan v. State,* 219 Md. 36, *cert. denied* 361 U. S. 849 (receiving stolen goods) ; *Butz v. State,* 221 Md. 68 (burglary) ; *Glaros v. State,* 223 Md. 272, 280 (larceny) ; *Booker v. State,* 225 Md. 183 (armed robbery) ; *Lewis v. State,* 225 Md. 474 (burglary and larceny) ; *Ponder v. State,* 227 Md. 570 (burglary) ; *Boggs v. State,* 228 Md. 168 (burglary) ; *Stapf v. State,* 230 Md. 106 (larceny) ; *Howard v. State,* 238 Md. 623 (burglary).

The reasonableness and legality of permitting an inference of fact that exclusive recent and unaccounted for possession is a

guilty possession is explained by the rule that there may be drawn an inference of one fact from proof of another or others if there is some rational connection between the fact or facts proved and the ultimate fact inferred so that the inference drawn from the proof is not so far-fetched as to be arbitrary.

It is not unreasonable to require the possessor to cause the facts of his possession to be explained if he desires to overcome the prima facie case against him arising from the permissible inference of fact flowing from his possession, because the facts as to that possession are peculiarly within his knowledge and ordinarily are not known or available to the State.

In the case before us, Judge Turnbull could have found (as he indicated he did) from uncontroverted evidence that the Weiss house had been broken into no earlier than February 9 and probably on February 11, that the charge-plate was in and had been stolen from the house, and that within days and probably within hours Anglin was in exclusive possession of the plate and was using it as its owner, and this under the Maryland cases cited above justified the inference Judge Turnbull drew that "* * * the only place he could have gotten it, under the evidence in this case [there having been presented no testimony of how Anglin secured the plate or that any other person had been involved in the stealing and handling of the plate], was in the Weiss house."

The evidence offered no reason to find Anglin not guilty of breaking but guilty of receiving. In *Jordan v. State,* 219 Md. 36, 47, cited above, Judge Prescott for the majority of the Court found the trial judge to have been justified, on the evidence that several persons were involved in the larceny and on other facts indicating that the accused there was as likely to have been the receiver as the thief, in finding a verdict of receiving stolen goods rather than larceny. He quoted Judge Cardozo in *People v. Galbo* (N. Y.), 112 N. E. 1041, 1044, as follows:

> "Only half of the problem, however, has been solved when guilty possession fixes the identity of the offender. There remains the question of the nature of his offense. Here again the facts must shape the inference. Is the guilty possessor the thief, or is he a

receiver of stolen goods? Judges have said that, if nothing more is shown, we may take him to be the thief. * * * But as soon as evidence is offered that the theft was committed by someone else, the inference changes, and he becomes a receiver of stolen goods."

The inference the facts shaped in the case before us was that Anglin was the thief. See *McNamara v. Henkel,* 226 U. S. 520, 57 L. Ed. 330, 333, in which a man found in possession of an automobile which had been taken from a burglarized garage nearby was convicted of burglary. He argued on appeal that while possession of property recently stolen could be evidence of larceny, it afforded no support for a conviction of burglary. The Court said:

"The evidence pointed to the appellant as one having control of the car and engaged in the endeavor [by trying to start the car] to secure the fruits of the burglarious entry. Possession in these circumstances tended to show guilty participation in the burglary. This is but to accord to the evidence, if unexplained, its natural probative force."

The constitutional issue was not expressly raised or decided below and ordinarily would not be before us for decision, Maryland Rule 885, but the overruling of the appellant's motion for judgments of acquittal necessarily rested on the basis that the inference of fact the trial judge drew validly could be drawn in the absence of satisfactory explanation of non-culpatory possession, and thus implicitly, the constitutionality of the rule that permitted the inference was raised and decided.

The Supreme Court, early and lately, has rejected the claims made here by appellant as to the impermissibility of allowing a trier of fact to infer from a proven fact which is not satisfactorily explained by the accused an ultimate fact which may be sufficient evidence of guilt.

In *Wilson v. United States,* 162 U. S. 613, 40 L. Ed. 1090, 1095, it was held that possession, soon after a murder, of articles apparently taken from the murdered man at the time of his death, if not satisfactorily accounted for, may be the founda-

tion of an inference of guilt. Chief Justice Fuller said for the Court:

"Possession of the fruits of crime recently after its commission justifies the inference that the possession is guilty possession, and, though only prima facie evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence."

*Yee Hem v. United States,* 268 U. S. 178, 69 L. Ed. 904, dealt with a federal act which prohibited the importation of opium and made it a crime to conceal or facilitate the concealment of it after importation knowing that it had been unlawfully imported. The act further provided that whenever one on trial is shown to have or to have had possession of proscribed opium "such possession shall be deemed sufficient evidence to authorize conviction unless the defendant shall explain the possession to the satisfaction of the jury." Another section provided that opium found in the United States after a named date shall be deemed to have been unlawfully imported "and the burden of proof shall be on the claimant or the accused to rebut such presumption." Yee Hem had been convicted on a charge to the jury that the burden of proof to adduce proof of guilt beyond a reasonable doubt rested on the government at all times and throughout the trial but that the burden was on Yee Hem to rebut the inference flowing from his possession of the opium so as to "at least explain it to the satisfaction of the jury." The Supreme Court affirmed the conviction, citing earlier cases that held that a legislative presumption of one fact from another does not constitute denial of due process or equal protection of the law if there is some rational connection between the fact proved and the ultimate fact inferred and the inference of one fact from another is not so unreasonable as to be a purely arbitrary mandate. Recognizing that the effect of the statute may be to give to the facts from which the inference is drawn an artificial value to some extent, the Court said this is no more than happens in respect of a variety of permissible inferences not resting on a statute, citing prior cases, including *Wilson* which we cited above. The Court then said (at 907 of 69 L. Ed.) :

"The point that the practical effect of the statute creating the presumption is to compel the accused person to be a witness against himself may be put aside with slight discussion. The statute compels nothing. It does no more than to make possession of the prohibited article prima facie evidence of guilt. It leaves the accused entirely free to testify or not, as he chooses. If the accused happens to be the only repository of the facts necessary to negative the presumption arising from his possession, that is a misfortune which the statute under review does not create, but which is inherent in the case. The same situation might present itself if there were no statutory presumption, and a prima facie case of concealment with knowledge of unlawful importation were made by the evidence. The necessity of an explanation by the accused would be quite as compelling in that case as in this; but the constraint upon him to give testimony would arise there, as it arises here, simply from the force of circumstances, and not from any form of compulsion forbidden by the Constitution."

In *Casey v. United States,* 276 U. S. 413, 72 L. Ed. 632, 634, the Court dealt again with a statute making possession of a narcotic drug not bearing required revenue stamps prima facie evidence of an illicit purchase. Justice Holmes for the Court said that there was in the statute the necessary rational connection between the fact proved and the ultimate fact. He said:

"The statute here talks of prima facie evidence but it means only that the burden shall be upon the party found in possession to explain and justify it when accused of the crime that the statute creates * * *. It is consistent with all the constitutional protections of accused men to throw on them the burden of proving facts peculiarly within their knowledge and hidden from discovery by the government."

*United States v. Gainey,* 380 U. S. 63, 13 L. Ed. 2d 658 (1965), involved a prosecution for carrying on an illegal dis-

tillery business; the trial judge had instructed the jury that the otherwise unexplained presence of the accused at the site of the still was sufficient evidence under the applicable and controlling federal statute to authorize conviction for having custody or control of an unregistered still, unless the accused explained his presence to the satisfaction of the jury. The accused could not do this but the Court of Appeals reversed his conviction on the ground that the statutory inference was unconstitutional. The Supreme Court, in an opinion by Justice Stewart expressing the views of seven members of the Court, reversed, holding that the statutory inference is constitutional, that it does not compel but only permits a conviction where the only evidence is that of presence and does not require a jury to convict if they find the government has not proved guilt beyond a reasonable doubt. Justices Black and Douglas dissented, finding the statute unconstitutional and objecting particularly to its provision that the jury may draw the inference of custody or control from the fact of presence "unless the defendant explains such presence to the satisfaction of the jury * * *," finding this to subject a defendant to an impermissible compulsion to testify and to make his failure to do so create an unconstitutional presumption against him.

The Court found that since Congress was undoubtedly aware "that manufacturers of illegal liquor are notorious for the deftness with which they locate arcane spots for plying their trade," its acknowledgment "of the implications of seclusion only confirms what the folklore teaches—that strangers to the illegal business rarely penetrate the curtain of secrecy"—and therefore there was in the statute the necessary rational connection between the facts proved and the ultimate fact which may be inferred. The Court then pointed out that the statute permitted the trial judge to submit a case to the jury on the basis of the accused's presence alone "and, to this extent it constitutes congressional recognition that the fact of presence does have probative worth in the determination of guilt," but that mere evidence of presence does not require submission.

Justice Stewart also approved the trial judge's charge that presence at the site of the still does not require conviction even if the defendant or the circumstances proved fail to explain his

unfortunate presence at the wrong time, but such unexplained presence merely permits a conviction. Thus, to convict, the trier of fact must find that the government has proved its case beyond a reasonable doubt. The Court then said (13 L. Ed. 2d at 664-65), as had the Court in *Yee Hem, supra*: "In the absence of the statute, such an instruction to the jury would surely have been permissible. Cf. *Wilson v. United States, supra* [102 U. S. 613, 40 L. Ed. 1090]," and continued:

> "Furthermore, * * * we do not consider that the single phrase [in the statute as amplified in the trial court's instruction] 'unless the defendant by the evidence in the case and by proven facts and circumstances explains such presence to the satisfaction of the jury' can be fairly understood as a comment on the petitioner's failure to testify * * *.
> "In McNamara v. Henkel, 226 US 520, 525, 57 L ed 330, 333, 33 S Ct 146, the Court approved a proceeding which did no more than 'accord to the evidence, if unexplained, its natural probative force.' That is all Congress has done here."

See also the following cases which support the conclusions to be drawn from the cited cases in the Supreme Court. *People v. McFarland* (Cal.), 376 P. 2d 449, 453; *People v. Kulig* (Ill.), 25 N. E. 2d 73; *State v. Todaro* (N. J.), 37 A. 2d 73; *Bray v. United States*, 306 F. 2d 743.

Anglin's contention that his failure to take the stand was used to or did incriminate him will not stand analysis. The constitutional prohibition against the use in any way by counsel or the trial court of the failure of the accused to testify is to prevent failure of or a deficiency in the State's case from being supplied or supplemented in any way directly or inferentially by the compelled testimony of the accused. Here the State's case offered prima facie evidence of Anglin's having burglarized the Weiss house by showing that soon after the burglary he had exclusive possession of an article stolen from that house, a possession that, if unexplained, permitted an inference of fact that Anglin had broken into the house and stolen the article. The trial judge showed in his dialogue with Anglin that he appre-

ciated that Anglin's decision not to testify added nothing to the State's case and could not to any extent prejudice Anglin. The State's case was prima facie complete to the point of justifying the determination of the trier of fact that Anglin was the burglar when Anglin decided not to offer evidence in rebuttal. The situation essentially is not different than if the State had offered an eyewitness to Anglin's breaking into the Weiss house. If he chose not to rebut the eyewitness' testimony, his decision could not effectively be claimed to have amounted to self-incrimination. In the case before us and in the case just suggested, the State proved enough to permit a trier of fact to find guilt and the accused chose not to attempt rebuttal. Anglin's claims on the constitutional issue must fail.

*Judgment affirmed.*