## JAMES THOMAS DINKINS *v.* STATE OF MARYLAND

[No. 345, September Term, 1975.]

*Decided January 2, 1976.*

578

The cause was argued before ORTH, C. J., and MENCHINE and MASON, JJ.

*S. Michael Floam, Assigned Public Defender,* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Dana Levitz, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

## THE RULE AS TO THE UNEXPLAINED, EXCLUSIVE POSSESSION OF RE- CENTLY STOLEN GOODS

To be sufficient in law to justify a conviction in a criminal cause, the admissible evidence adduced must show directly, or circumstantially, or support a rational inference of, the facts to be proved from which the trier of fact may be convinced, beyond a reasonable doubt, of the accused's guilt of the offense charged. *Metz v. State,* 9 Md. App. 15, 23 (1970); *Williams v. State,* 5 Md. App. 450, 458-460 (1968). We deal here with the aspect of this test for the sufficiency of the evidence which concerns an inference.

We observed in *Evans v. State,* 28 Md. App. 640, 349 A. 2d 640 (1975): "In a real sense, the whole decision-making process is the process of drawing inferences. From fact A we infer fact B. . . . The whole phenomenon of circumstantial evidence is the phenomenon of inferring facts in issue from facts established." We pointed out that certain inferences, out of the infinite swarm of their

fellows, have been singled out for legal analysis. One inference so singled out is that arising from the possession of stolen goods. The rule is that the unexplained, exclusive possession of recently stolen goods permits the inference that the possessor is the thief.[1] *Debinski v. State*, 194 Md. 355, 360 (1950)[2]; *Davis and Napier v. State*, 7 Md. App. 667, 669 (1969). This is a traditional common law inference deeply rooted in our law. *Barnes v. United States*, 412 U. S. 837, 843 (1973).[3] Maryland has long followed the rule. *Anglin v. State*, 244 Md. 652, 656 (1966), *cert. den.*, 386 U. S. 947 (1967), and cases therein cited. The historical basis of the inference, however, does not guarantee its constitutionality. Common law inferences must satisfy due process standards in light of present day experience. *Barnes*, at 843-844. The Supreme Court of the United States considered the question of the validity of

---

1. Henceforth in this opinion, when we refer to the rule concerning possession of stolen goods, we do so in the context that the goods were recently stolen and that the possession of them was unexplained and exclusive. For a discussion of "recently stolen" see Anglin v. State, 1 Md. App. 85, 92-93 (1967). "Joint possession" may be "exclusive possession." Davis and Napier v. State, 7 Md. App. 667, 669 (1969), and cases therein cited.

2. The Court in *Debinski* fell into the trap of stating the rule in terms of "recent possession of stolen goods." 194 Md., at 360.

3. It seems that in early times, being taken in possession of stolen goods involved immediate punishment. Later, such possession allowed a trial without formal accusation. Later still, the possession led to a presumption of guilt, which in the absence of contrary evidence, justified a verdict. J. Thayer, Preliminary Treatise on Evidence, 328 (1898) as set out in Barnes v. United States, *supra*, at 444, n. 5. For a discussion of the various meanings of "presumption", see Evans v. State, *supra*, at 676-677. Today, possession of stolen goods does not result in a presumption but permits judicial recognition of a permissible inference. Hochheimer, Criminal Law § 716 (1897) recognized this: "The doctrine formerly held, that recent possession of stolen goods raised a presumption of guilt which must be overcome by proof on the part of the accused has been wholly repudiated by the best considered modern cases. The burden of proof never shifts in a criminal case, and guilt can not be presumed from any given state of facts. Recent possession of stolen property is merely a *fact relevant to the question of guilt*, to be considered by the jury, in connection with all the other evidence submitted to them, in determining the guilt or innocence of the accused. The presumption, if it arises in any case, is one wholly of fact, not of law. No legal significance attaches to the defendant's failure or inability to explain his possession; and the safe and correct practice is not to charge as to its effect." Some authorities, however, still use presumption and inference interchangeably in connection with the rule. See 1 Wharton's *Criminal Evidence* § 139 (1972).

criminal law presumptions and inferences in several recent cases before *Barnes*.[4] Although the Supreme Court itself has found that the teaching of those cases was not altogether clear, *Barnes*, at 843, the cases established, at least, that if a statutory inference submitted to a jury as sufficient to support conviction satisfied the reasonable-doubt standard as well as the more-likely-than-not standard[5], then it clearly accorded with due process.[6] We think it advisable, in the circumstances, to apply the more stringent reasonable-doubt standard. See Comment, *The Constitutionality of the Common Law Presumption of Malice in Maine*, 54 B.U.L.Rev. 973, 978-986 (1974).

We indicated in *Evans* that an inference comes to judicial attention in two situations. "When we are called upon to measure the legal sufficiency of evidence, we have to determine whether established facts A and B are legally sufficient to give rise to a fair inference of fact C, the ultimate fact in issue. We are similarly called upon to measure the efficacy of certain inferences when we are asked to instruct a jury that it may (although it need not) infer fact C from established facts A and B." 28 Md. App., at

---

4. Turner v. United States, 396 U. S. 398 (1970); Leary v. United States, 395 U. S. 6 (1969); United States v. Romano, 382 U. S. 136 (1965); United States v. Gainey, 380 U. S. 63 (1965).

5. The reasonable-doubt standard is that the evidence is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt. *Barnes*, at 843. This is the most stringent standard the Court has applied in judging permissive criminal law inferences. *Id.*, at 846. The more-likely-than-not standard requires that at least it can be said with substantial assurance that the inferred fact is more likely than not to flow from the proved fact. *Id.*, at 842, quoting from Leary v. United States, *supra*, at 36. If the reasonable-doubt standard is satisfied, the less stringent more-likely-than-not standard is certainly satisfied.

The Court said, *id.*, at 843: "To the extent that the 'rational connection,' 'more-likely-than-not,' and 'reasonable-doubt' standards bear ambiguous relationships to one another, the ambiguity is traceable in large part to variations in language and focus rather than to differences of substance."

6. The Court pointed out in *Barnes*, at 845, n. 8, that the reasoning of the statutory inference cases is applicable to analysis of common law inferences. It observed: "Common-law inferences, however, present fewer constitutional problems. Such inferences are invoked only in the discretion of the trial judge. While statutes creating criminal law inferences may be interpreted also to preserve the trial court's traditional discretion in determining whether there is sufficient evidence to go to the jury and in charging the jury, . . . such discretion is inherent in the use of common-law inferences." (citations omitted).

703. Thus, upon legally sufficient proof that certain goods were recently stolen, that they were in the exclusive possession of the accused, that the possession was not satisfactorily explained, and in the absence of other facts indicating that the accused was more likely to be the receiver than the thief, *Jordan v. State*, 219 Md. 36, 47 (1959), *cert. den.*, 361 U. S. 849 (1959), the judge at a bench trial may infer, in his role as the trier of fact, that the accused was the thief. At a jury trial, the judge may, and at the request of a party, shall, Maryland Rule 756, § b, instruct the jury that it may infer that the accused was the thief. The question is whether this permissible inference is in accord with constitutional standards.

*Due Process of Law*

Hammond, C. J., said in the opinion of the Court in *Anglin v. State, supra,* 244 Md., at 656-657:

"The reasonableness and legality of permitting an inference of fact that exclusive recent and unaccounted for possession is a guilty possession is explained by the rule that there may be drawn an inference of one fact from proof of another or others if there is some rational connection between the fact or facts proved and the ultimate fact inferred so that the inference drawn from the proof is not so far-fetched as to be arbitrary."

This view is that of the Supreme Court. It is only the unexplained, exclusive possession of recently stolen goods which permits the inference that the possessor is the thief. The mere fact that there is some evidence tending to explain the possession consistent with innocence does not bar the judge in a bench trial from drawing the inference or in a jury trial from instructing the jury on the inference. The trier of fact must weigh the explanation to determine whether it is reasonable or "plausible", or "satisfactory". It is not bound to accept or believe any particular explanation any more than it is bound to accept the correctness of the inference. But the burden of proving beyond a reasonable

doubt that the accused stole the property remains in the prosecution. *Barnes*, at 845, n. 9. "If the [State] proves possession and nothing more, this evidence remains unexplained unless the defendant introduces evidence, since ordinarily the [State's] evidence will not provide an explanation of his possession consistent with innocence." *Id.*[7]

*Mullaney v. Wilbur*, 421 U. S. 684, 95 S. Ct. 1881 (1975), provides no basis to support a belief that the inference permitted from possession of stolen goods violates due process. We so indicated in *Evans*. We said, at 703, "Since an inference does not shift a burden either of persuasion or of going forward with evidence to a defendant, it does not come under the scrutiny of *Mullaney v. Wilbur* in that regard." We applied that conclusion in *Horn v. State*, 29 Md. App. 23 (1975), and we expressly now affirm it.[8]

## Self-incrimination

The Court of Appeals in *Anglin v. State, supra,* also considered the inference arising from possession of stolen goods in the frame of reference of the Fifth Amendment prohibition against a person being compelled in any criminal case to be a witness against himself. It said, 244 Md., at 657: "It is not unreasonable to require the possessor to cause the facts of his possession to be explained if he desires to overcome the prima facie case against him arising from the permissible inference of fact flowing from his possession, because the facts as to that possession are peculiarly within his knowledge and ordinarily are not known or available to

---

7. The Court cautioned: "We do not decide today whether a judge-formulated inference of less antiquity or authority may properly be emphasized by a jury instruction." 412 U. S., at 846, n. 11.

8. We added a caveat in *Evans*, at 703-704: "Since an illogical or improbable 'inference' would, however, unfairly relieve the State of part of its burden of proving every element of a case beyond a reasonable doubt, the inference, even as a mere inference, must pass constitutional muster under *United States v. Gainey*, 380 U. S. 63, 85 S. Ct. 754, 13 L.Ed.2d 658 (1965); *United States v. Romano*, 382 U. S. 136, 86 S. Ct. 279, 15 L.Ed.2d 210 (1965), and *Leary v. United States*, 395 U. S. 6, 89 S. Ct. 1532, 23 L.Ed.2d 57 (1969). It must, therefore, be based upon a rational connection between the facts established and the fact to be inferred." This is, of course, in complete accord with the teaching of *Barnes*.

the State." It observed, at 658: "The Supreme Court, early and lately, has rejected the claims made here by appellant as to the impermissibility of allowing a trier of fact to infer from a proven fact which is not satisfactorily explained by the accused an ultimate fact which may be sufficient evidence of guilt." [9] The Supreme Court in *Barnes v. United States, supra,* made crystal clear that it stood by its position that the privilege against self-incrimination was not infringed by the inference. It said, 412 U. S., at 846-847: "This Court has twice rejected this argument [that the privilege was infringed], Turner v. United States, 396 U. S., at 417-418, 90 S. Ct., at 652; Yee Hem v. United States, 268 U. S. 178, 185, 45 S. Ct. 470, 472, 69 L. Ed. 904 (1925), and we find no reason to re-examine the issue at length. . . . Introduction of any evidence, direct or circumstantial, tending to implicate the defendant in the alleged crime increases the pressure on him to testify. The mere massing of evidence against a defendant cannot be regarded as a violation of his privilege against self-incrimination." The Court noted, *id.,* at 846, n. 12: "Nor can the instruction [stating the rule] 'be fairly understood as a comment on the [defendant's] failure to testify.' United States v. Gainey, 380 U. S., at 70-71, 85 S. Ct., at 759."

We find that the inference of criminal agency permitted from the unexplained, exclusive possession of recently stolen goods does not violate the constitutional guarantee against self-incrimination.

## THE CASE *SUB JUDICE*

*Statement of the Case*

On 3 January 1975 in the Criminal Court of Baltimore, JAMES THOMAS DINKINS was found guilty by a jury of

---

**9.** The Court in *Anglin* referred to and discussed, 244 Md., at 658-662, Wilson v. United States, 162 U. S. 613 (1896); Yee Hem v. United States, 268 U. S. 178 (1925); Casey v. United States, 276 U. S. 413 (1928); United States v. Gainey, 380 U. S. 63 (1965). It cited, at 662, the following cases as supporting the conclusions to be drawn from the Supreme Court cases: "*People v. McFarland* (Cal.), 376 P. 2d 449, 453; *People v. Kulig* (Ill.), 25 N.E.2d 73; *State v. Todaro* (N. J.), 37 A. 2d 73; *Bray v. United States,* 306 F. 2d 743."

feloniously robbing James L. Brown with a deadly weapon on 22 March 1974, stealing from him $14,000, on which conviction a sentence of 20 years was imposed, of unlawfully using a handgun in a crime of violence, on which conviction a consecutive sentence of 5 years was imposed, and of unlawfully carrying a handgun upon his person, on which conviction a concurrent sentence of 3 years was imposed. A motion for a new trial was heard and denied. A timely appeal from "the judgment and sentence" was noted.

## Issues for Decision

The two questions Dinkins presents on appeal center on the permissible inference arising from possession of stolen goods. The challenge to the inference is through the instructions given by the trial judge to the jury. The judge below explained that the jury were the judges of the law and that his instructions were advisory only. Rule 756 § b. He made clear that it was the jury's function and responsibility to determine the facts. They were to do so "solely from the evidence and all of the evidence which you have seen and heard during the course of the trial, and any inferences which may reasonably be drawn from that evidence." The jury were the sole judges of the credibility of the witnesses, and it was the duty of the jury to weigh the evidence. He discussed the burden of proof:

> "You should not assume that the Defendant is guilty merely because he is being prosecuted and because charges have been brought against him. The burden of proof is on the State to prove every element of the crimes charged against the Defendant, and he is presumed innocent until proved guilty beyond a reasonable doubt. That presumption attends him throughout the trial and unless or until overcome by proof establishing his guilt beyond a reasonable doubt and to a moral certainty. While the burden is on the State of establishing every fact material to the guilt of the Defendant, including every circumstance that enters into the crime charged beyond a reasonable

doubt, that does not mean that the State must prove the Defendant guilty to an absolute or mathematical certainty."

He explained what the reasonable-doubt standard did mean. He discussed the inference:

"If one is in possession of property which has recently been stolen, unless there is a satisfactory explanation of that possession, may be inferred to be guilty of stealing the property. And if the property was stolen in a robbery with a dangerous or deadly weapon, then it may be inferred from the possession of the recently stolen property that he committed the crime of robbery with a dangerous or deadly weapon.

Once this inference arises, the burden is cast upon the possessor of the goods to give a reasonable explanation of how they came to his possession."

He went on to discuss the nature of "possession", pointing out that it must be exclusive but need not be sole and that it may be constructive as well as actual. He returned to the burden of proof:

"As I have already stated, in order to find the Defendant guilty of any of the crimes charged in these informations, he must be proven guilty beyond a reasonable doubt and to a moral certainty. Guilt beyond a reasonable doubt may be based on direct evidence of facts, or it may be based on circumstantial evidence. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. Circumstantial evidence alone is sufficient to support a verdict of guilt. The law makes no distinction between direct evidence of a fact and evidence of circumstances from which the existence of a fact may be inferred. No greater degree of certainty is required when the evidence is

circumstantial than when it is direct, because in either case, the jury must be convinced beyond a reasonable doubt of the guilt of the Defendant. The Defendant is entitled to every inference in his favor which can reasonably be drawn from the evidence. And where two inferences may be drawn from the same facts, one consistent with guilt and one consistent with innocence, the Defendant is entitled to the inference which is consistent with innocence."

The charge covered self-incrimination:

"It is the privilege of a Defendant in a criminal case not to testify. You may not entertain any inference against him because of his absence from the stand. You must base your verdict in this case solely on the evidence and all of the evidence which you have seen and heard during the trial, and the inferences which may be fairly drawn from the evidence."

Dinkins now asks:

"I. Did the trial court's charge deprive the appellant of his privilege against self-incrimination in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

II. Did the trial court's charge violate the fundamental constitutional privilege that an accused is presumed innocent until he is proved guilty and that the State, before it can secure a conviction, must demonstrate to the jury beyond a reasonable doubt each essential element of the alleged offense."

He argues, of course, that each question must be answered in the affirmative.

We first observe that the errors Dinkins now assigns in the instructions were not raised below. Rule 756 f provides

that objection as to instructions shall be made before the jury retires to consider the verdict, "stating distinctly the portion, or omission, or failure to instruct ... and the ground of objection." Section g of the Rule provides: "Upon appeal a party assigning error in the instructions may not assign as of right an error unless (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct was distinctly objected to before the jury retired to consider its verdict and (2) the grounds of objection were stated at that time. Ordinarily no other error will be considered by the Court of Appeals or the Court of Special Appeals, but the appellate court, either of its own motion or upon the suggestions of a party may take cognizance of and correct any plain error in the instructions, material to the rights of the accused even though such error was not objected to as provided by section f of this Rule." See *Taylor v. State,* 17 Md. App. 41 (1973). If Dinkins were correct in his contentions, there would be plain error, material to his rights, of which we would take cognizance and correct. We, therefore, shall consider the contentions on the merits.

I

We hold that the charge to the jury did not infringe Dinkins's privilege against self-incrimination. There was direct evidence adduced at the trial sufficient in law to establish beyond a reasonable doubt that the crime of robbery with a deadly weapon was committed and that Dinkins was in exclusive possession of the $14,000 recently stolen.[10] The possession was unexplained. That is, neither the evidence brought forward by the State, nor the evidence adduced by Dinkins, provided a plausible explanation of his possession of the money consistent with innocence. The possession of the stolen money provided evidence by rational

---

10. The robbery took place at 9:20 A.M. It was committed by two men wearing yellow hard-hats and armed with shotguns. Thirty minutes later the police apprehended three men, one of whom was Dinkins, in an automobile which the victim had observed during the robbery. Dinkins was seated in the right front seat and on the floor near him was a brown bag containing $14,000. A shotgun was between the driver's legs, and other guns and hard-hats were found in the vehicle.

inference that Dinkins was one of those who stole it. There was direct evidence legally sufficient to show that the money was stolen in a robbery with a deadly weapon. On the evidence, common sense and experience tell us that Dinkins must have been one of the robbers. *Barnes*, at 846, citing *Turner*, at 417 and *Leary*, at 46. Such evidence was clearly sufficient to enable the jury to find the criminal agency of Dinkins beyond a reasonable doubt. As the inference thus satisfied the reasonable doubt standard, it satisfied the requirement of due process. Since it was of constitutional validity in that respect, it did not, as we have seen, infringe the privilege against self-incrimination.

## II

It is said that an accused is presumed innocent until proved guilty beyond a reasonable doubt. This is a mere statement of who has, and what is, the burden of persuasion. Generally termed the "presumption of innocence", it is not, as we noted in *Evans*, at 676, n. 13, a presumption at all, nor, of course, is it an inference. We said:

> "9 *Wigmore on Evidence* (3rd Ed. 1940), § 2511, points out at p. 407, '[T]he 'presumption of innocence' is in truth merely another form of expression for a part of the accepted rule for the burden of proof in criminal cases, *i.e.* the rule that it is for the prosecution to adduce evidence . . . and to produce persuasion beyond a reasonable doubt. . . .' Thayer, *Preliminary Treatise on Evidence* (1898), is equally clear, at p. 551, 'in the first place, the so-called presumption of innocence is not, strictly speaking, a presumption in the sense of an inference deduced from a given premise. It is more accurately an assumption which has for its purpose the placing of the burden of proof upon anyone who asserts any deviation from the socially desirable ideal of good moral conduct.' And see Morgan, *Basic Problems of Evidence* (1962), p. 44.
>
> If the 'presumption of innocence' were a true

presumption of law or permitted inference of fact, it would be flagrantly unconstitutional under *Leary v. United States, supra,* and other cases requiring that a presumption be based upon a mathematical probability that it be true. Quite the reverse likelihood, of course, applies to one arrested, indicted and brought to trial. As McCormick, *The Law of Evidence* (1954), astutely pointed out, at 647-648: '[W]hen it came to be employed, in argument and in instructing juries, in criminal trials under the common law, it became a source of mysticism and confusion. As applied to the accused, any assumption, or 'presumption' of innocence, in the popular sense of an inference based on probability, is absurd. The probability is the reverse. The assumption of innocence which is reasonable in the absence of contrary facts becomes quite unrealistic when we include in the picture the facts that the person has been officially charged with the crime and has been brought to trial. Nevertheless, the phrase 'presumption of in-nocence' has been adopted by judges as a convenient introduction to the statement of the burdens upon the prosecution, first of producing evidence of the guilt of the accused and, second, of finally persuading the jury or judge of his guilt beyond a reasonable doubt.' "

Dinkins claims that the inference regarding possession of stolen goods submitted to the jury violated his constitutional rights in two respects: "It allowed the jury to presume guilt without proof of each element of the offense beyond a reasonable doubt and it shifted to [him] the burden of proof and persuasion of his innocence of the crime of robbery." Under the teachings of *Mullaney, Barnes* and *Evans,* and in light of the totality of the charge given the jury,[11] we believe

---

11. The trial judge gave the jury a definition of robbery in accord with Williams v. State, 7 Md. App. 683, 685 (1969). He also charged that possession of the stolen goods "must be personal and with a distinct assertion of the right to exercise complete control over the property and

that the contention has no merit. We hold that the trial judge's instruction did not violate "the fundamental due process requirement of presumed innocence."

On 20 November 1975 there was submitted to this Court a document addressed by Dinkins to his counsel on appeal, dated 16 November 1975. The argument before us was on 18 November. The document seems to advance the point that there was a denial of a speedy trial. That issue was not presented in appellant's brief and, we do not consider it. Rule 1031 § c and Rule 1046 § f.

*Judgments affirmed.*

---

over the disposal of the property." This was enough to advise the jury that a robber must have the intent to deprive the owner of his property permanently. See Gover v. State, 15 Md. App. 163 (1972), affirmed, 267 Md. 602 (1973).