# JOHN ANTHONY McLAURIN *v.* STATE OF MARYLAND

[No. 686, September Term, 1975.]

*Decided May 6, 1976.*

376

The cause was argued before ORTH, C. J. and GILBERT and MELVIN, JJ.

*Charles W. Turnbaugh, Assigned Public Defender,* for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County* and *Steven D. Silverman, Assistant State's Attorney for Baltimore County* on the brief, for appellee.

MELVIN, J., delivered the opinion of the Court.

On April 1, 1975, the defendant, John Anthony McLaurin, was brought to trial in the Circuit Court for Baltimore County (MacDaniel, J., presiding) on six separate indictments, alleging his complicity in the theft of five automobiles and their contents and the hubcaps of a sixth automobile. He elected a jury trial. The jury found him guilty of the following:

1. Count II of Indictment No. 50585, larceny of a white 1972 Lincoln Continental automobile on 11 November 1974 belonging to Eileen Colvin.

2. Count I of Indictment No. 50586, larceny of 4 automobile hubcaps of a value more than $100 on 11 December 1974 belonging to Elizabeth Eugenia Canavan and taken from her 1974 Thunderbird automobile.

3. Count II of Indictment No. 50587, receiving stolen property consisting of 3 rolls of pennies, Christmas cards and a toy, on 11 December 1974, of a value less than $100, taken from a 1970 Ford automobile belonging to Maude Edna Neilson.

4. Count I of Indictment No. 50588, larceny of a 1972 one-half ton Ford van and its contents on 8 November 1974, belonging to Michael Mierzwinski.

5. Count I of Indictment No. 50590, larceny of a green 1972 Lincoln Continental automobile and its contents on 11 November 1974, belonging to James Henry Farrell.

6. Count II of Indictment No. 50602, receiving stolen property, consisting of a knife and hatchet in a leather case, a plastic tool case, and a jack and handle of a value less than $100, on 11 December 1974, taken from a 1969 Ford van belonging to John Robert Meadowcroft.

Appellant received sentences of ten years on each of the four larceny convictions, and three years on each of the

receiving convictions. All the sentences were to be served concurrently except the three year sentence for the receiving conviction in Indictment No. 50587, which was to be served consecutively to the "ten years sentence, in the first indictment [No. 50585]". Appellant has taken this appeal from all the convictions and presents four questions:

I. Was the appellant denied due process of law and the right to call witnesses on his own behalf?

II. Did the trial judge improperly and prejudicially admit into evidence, over the strenuous objection of trial defense counsel as stipulated, facts and testimony to which the appellant never agreed?

III. Was the evidence sufficient to allow the jury to infer the appellant exercised possession or control over the stolen property found in the car in which he was a passenger?

IV. Was the evidence sufficient for conviction of larceny of either the Colvin car (Indictment No. 50585) or the Farrell car (Indictment No. 50590)?

We discuss the questions and the pertinent facts with respect thereto in the order presented.

I

*Due Process*

Before the trial began, appellant moved to suppress as evidence articles found by the police in a search of an automobile on 11 December 1974, in which at that time appellant was a passenger. A suppression hearing was held out of the presence of the jury. The motion was denied. During the trial the critical articles found in the car were admitted in evidence without objection and appellant does not now contest the legality of the search or of his arrest. His contention here is that during the suppression hearing the trial judge deprived him of due process by denying him a postponement to secure the presence of a witness for whom he had issued a subpoena but who did not appear in response thereto. The witness, also a passenger in the car,

presumably would have testified to whether the trunk of the car was open or closed at the time of the search. As we believe that, under the circumstances revealed by the record, the search of the trunk was proper regardless of whether the trunk was open or closed, we hold that any error by the trial judge in not allowing a postponement was harmless beyond a reasonable doubt.

In *Mobley and King v. State*, 270 Md. 76 (1973), at 80-81, the Court of Appeals in affirming this Court in *Mobley and King v. State*, 16 Md. App. 546 (1973), said:

> "The Court of Special Appeals concluded that the only theory that could legitimate the warrantless search of the appellants' vehicle was the so-called 'automobile exception' to the search warrant requirement first established in 1925 by *Carroll v. United States*, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543. Under that exception, a motor vehicle, unlike a home, may be searched without a warrant or previous arrest under appropriate circumstances when the officer has probable cause in the constitutional context to believe that the vehicle contains the fruits, instrumentalities, or other evidence of a crime. See *Dyke v. Taylor Implement Mfg. Co., Inc.*, 391 U. S. 216, 88 S. Ct. 1472, 20 L. Ed. 2d 538 (1968); *Brinegar v. United States*, 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); *Scher v. United States*, 305 U. S. 251, 59 S. Ct. 174, 83 L. Ed. 151 (1938); *Husty v. United States*, 282 U. S. 694, 51 S. Ct. 240, 75 L. Ed. 629 (1931); *United States v. Lee*, 274 U. S. 559, 47 S. Ct. 746, 71 L. Ed. 1202 (1927). Since the rule is justified on the basis that an automobile is so readily movable as to make impracticable the obtaining of a search warrant, the existence of exigent circumstances must be shown in addition to probable cause to validate the warrantless search. *Coolidge v. New Hampshire, supra; Chambers v. Maroney, supra.* We recognized and applied the doctrine in *Peal v. State*, 232 Md. 329, 193 A. 2d 53 (1963).

> Probable cause to conduct a warrantless search of an automobile under *Carroll* and its progeny exists in the constitutional sense when the facts and circumstances within the officer's knowledge, and of which he had reasonably trustworthy information, are such as would warrant a man of reasonable caution in believing that the vehicle contained articles lawfully subject to seizure . . . To satisfy the probable cause requirement, therefore, an officer is not required to have actual knowledge that the vehicle contains fruits, instrumentalities, or other evidence of a crime at the time he undertakes his warrantless search. '. . . [o]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause . . . .' *Spinelli v. United States*, 393 U. S. 410, 419; 89 S. Ct. 584, 21 L.Ed.2d 637 (1969). . . ."

Officer Ronald B. Schwartz of the Baltimore County Police Department testified at the suppression hearing that at about 9:30 P. M. on 11 December 1974, he "responded" to the parking lot of E. J. Korvettes on East Joppa Road in the Parkville district of Baltimore County. His attention was drawn to two automobiles parked on the lot, a 1974 Ford Thunderbird and a 1972 green two-door Oldsmobile. The two cars were parked about fifteen feet apart. Two people were inside the Oldsmobile and as Officer Schwartz "pulled up on the scene", a third person opened the driver's door and got in the back seat of the Oldsmobile. The appellant was in the front passenger seat.

Officer Schwartz noticed that the left rear of the Ford "had been jacked up" and "[o]n the lefthand side the hubcaps had been removed and wheel lugs also removed on the tires". The "lug nuts" were "scattered along the ground as you would take the lug nuts off and let them fall". He approached the driver's side of the Oldsmobile and "receive[d] identification from" two of the occupants. Without entering the car, with the aid of his flashlight he saw "in plain view" on the rear floor of the Oldsmobile "a handle to a jack which appeared to fit the one underneath

the T-bird that had been jacked up". He also observed on the rear floor, again "in plain view", a hatchet and a knife in a leather case. In the meantime, other police officers had arrived at the scene. While "[t]he three occupants of the car were [being] removed" and searched for weapons (none were found), Officer Schwartz went to the rear of the car and observed that the trunk lid was open "two or three inches" with the key in the lock. Without further opening the trunk, he shined his flashlight inside the trunk and "was able to see a hubcap — chrome in color, the wire type". He then "went ahead and opened the trunk and observed not only one but there were four [hubcaps]". When asked by the prosecutor why he opened the trunk he responded:

> "The reason why I opened it, well, when I first looked in, of course I was suspicious about the car that had been jacked up. There was also a car sitting one vehicle away with somebody outside the vehicle. As the items had been missing off the car that was jacked up and it appeared to be the items that were in the trunk went to the auto that was jacked up, it further made me suspicious, after which I opened it, after looking in the trunk, and I came up with the various items that are on display."

Appellant's testimony at the suppression hearing contradicted Officer Schwartz only with regard to whether the trunk was open or closed when the police arrived on the scene. Appellant said the "trunk was shut", but with the key in the lock. Referring to his request to have the trial delayed until the missing witness could be located, defense counsel said to the trial judge:

> "You have a difference in testimony concerning the facts of the search. I submit that obviously if these things were found in the trunk in plain view the search was reasonable. I don't believe that is the way it happened. I think there is an escalation of testimony and I wish you would allow me at some time to introduce the testimony of Tony

Jeffers *on this matter*, if he should be located."
(Emphasis added.)

In our view, even accepting a version of the facts most favorable to appellant, Officer Schwartz had ample probable cause to search the trunk under the circumstances. The scene that confronted the officer when he arrived at the parking lot was certainly grounds for believing that someone was "stripping" the Ford of its wheels, probably the individual he saw climb into the back seat of the Oldsmobile as he drove up, acting in consort with the other two persons already in the car. His lawful observation of the jack handle inside the Oldsmobile "which appeared to fit" the jack he saw under the Ford, coupled with his observation of the trunk key still in its lock, furnished the necessary probable cause to believe that the stolen hubcaps were in the trunk. The necessary exigency was also present. Thus, the warrantless search was a proper one.

## II

### *The Stipulation Concerning Fingerprints*

The question here directly involves appellant's conviction of larceny of the 1972 one-half ton Ford van and its contents belonging to Michael Mierzwinski (Count I of Indictment No. 50588). The key evidence linking the appellant to this crime consisted of four latent fingerprints lifted from the van after it was reported stolen from the parking lot of Towson State College on the morning of 8 November 1974. Later that day Lieutenant William Ronald Morton of the Towson State College Campus Police discovered the van parked on a street in the general vicinity of appellant's home. Responding to Lieutenant Morton's call, Corporal Edward Vanik of the Baltimore County Police arrived at the scene. Corporal Vanik is a fingerprint expert. He testified that he "processed the van for latent prints" and lifted one fingerprint from the gearshift knob, two prints from the interior of the vent window on the driver's side, and one print from the interior of the window on the driver's side. The prints "were then taken back to the Crime Lab and placed in our latent print

file for identification". After the conclusion of Corporal Vanik's testimony, the following occurred:

"MR. SILVERMAN: We now come to the final stipulation, which is the testimony of Sergeant Henninger, a qualified expert, in Baltimore County in fingerprinting.

MR. TURNBAUGH: May counsel approach the Bench?

THE COURT: Certainly.

(Counsel conferred with the Court at the Bench.)

MR. SILVERMAN: The final stipulation in the case involves the testimony of Sergeant Wayne Henninger who is a qualified expert in identifying and comparing fingerprints in Baltimore County. *His testimony would be* that he compared the four latent prints, which are these four right here, lifted by Corporal Vanik, the previous witness, from the automobile mentioned, and *that in comparing these four latent lifted prints to the inked fingerprint card of this defendant, he found these four prints corresponded identically and positively to the prints of the Defendant John McLaurin.* (Emphasis added.)

MR. TURNBAUGH: Objection to the extent the fingerprint card belonged to McLaurin.

MR. SILVERMAN: I read it was the inked fingerprint card of John McLaurin.

THE COURT: Overruled. It has been stipulated to. We are not changing the stipulation in the middle of the trial.

MR. TURNBAUGH: May I speak on that question?

(Counsel conferred with the Court at the Bench.)

THE COURT: Is there anything further as to the stipulation?

MR. TURNBAUGH: Yes, Your Honor. Neither my client nor I have ever stipulated the card that

Sergeant Henninger used to compare prints was the card of my client. If we are to proceed I feel the State should present the testimony of whatever person rolled McLaurin's prints and got them on the card for comparison. Until that is done the comparison is incomplete. I don't doubt, and have agreed, Sergeant Henninger compared two sets of prints and they came up the same, but you have to tie in the other set that Sergeant Henninger has.

THE COURT: The Court finds that it was allowed in the stipulation that Sergeant Henninger would testify from his information received it was the fingerprint of your client, the Defendant, and that is what he compared them with. We will proceed with the next testimony."

Appellant contends on appeal, as he did below, that he never stipulated that Sergeant Henninger would testify that the prints he compared with those lifted from the van were those of the appellant. Rather, the extent of the stipulation was that Henninger would testify that the prints lifted from the van were made by the same person whose prints appeared on a fingerprint card forwarded to the Baltimore County Police Department by an Officer Aquilla of the Baltimore City Police Department. As his counsel put it at trial, "Neither my client nor I have ever stipulated the card that Sergeant Henninger used to compare prints was the card of my client". Consistent with this position appellant argues that the State "unilaterally expanded the 'stipulation' to include the required testimony of Officer Aquilla" who "was allegedly to testify that he rolled the Appellant's fingerprints onto a fingerprint card and forwarded the fingerprint card to the Baltimore County Police".

Without knowing what transpired at the two bench conferences concerning the stipulation, it is of course difficult for us to assess the accuracy of the trial judge's finding that the appellant had irrevocably stipulated that Sergeant Henninger would testify "from information received" that the prints he compared with those he lifted from the stolen van were the appellant's.

The State concedes in its brief that "[w]ithout more in the record, it is difficult to say whether or not the trial court was erroneous in permitting the stipulation to go to the jury". The record is very clear, however, that immediately following the presentation of the stipulation to the jury appellant objected "to the extent the fingerprint card belonged to McLaurin [the appellant]". Moreover, there are clear indications in the record that at the time the stipulation was presented to the jury the prosecuting attorney understood that it was not to include that Henninger would testify that he used *appellant's* prints for comparison, since Henninger, if present at trial, could not have so testified of his own knowledge. At the hearing on appellant's motion for a new trial, the prosecutor stated to the court:

> "As for the stipulation, the State did not offer any testimony of Officer James Aquilla. *The State merely offered the testimony of Detective Henninger.* Detective Henninger took the fingerprint card that was prepared by James Aquilla, a Baltimore City Police Officer; that's all the State introduced.[1] The State merely stipulated that Detective Henninger took an inked fingerprint card *which had been prepared by Officer James Aquilla* of the Baltimore City Police Department and compared that with the lifted latent prints that Corporal Vanick testified to and came back as being the fingerprints of John McLaurin, the Defendant. *When the State mentioned the inked fingerprint card that Officer Aquilla prepared, it merely stated that an inked card bearing the name McLaurin. It did not ask for a stipulation and did not specifically state to the jury — and I made sure that I did not state it was this Defendant's fingerprints. I merely stated it was an inked fingerprint card prepared by this officer bearing the name of John McLaurin, which*

---

1. The comparison card was never offered in evidence.

*happened to be the same name of the Defendant.*
When that came back then Detective Henninger
compared the two, and that stipulation came in
that the fingerprints were the same. *The jury was
free to make any inference it wanted to."*
(Emphasis added.)

The prosecutor's statement to the court can only be
described as misleading "double-talk". If it represents the
clarity, or lack thereof, with which the stipulation was
described to the trial judge at the unrecorded bench
conferences during the trial, the judge's misunderstanding
of the extent of the stipulation is understandable. It is
impossible to reconcile the prosecutor's statement, "I made
sure that I did not state [to the jury] it was *this Defendant's
fingerprints"*, with the "stipulation" he actually presented to
it that *Sergeant Henninger's "testimony* would be . . . that in
comparing these four latent lifted prints to the inked
fingerprint card *of this Defendant,* he found these four
prints corresponded identically and positively to the prints
*of the Defendant John McLaurin".* (Emphasis added.)

We think it clear that the trial judge, understandably,
misconstrued the true extent of the stipulation reached
between the State and the appellant. Under the
circumstances, understandable or not, it was error to
overrule appellant's objection to the "stipulation" in the
form the prosecutor presented it to the jury. The appellant
was thereby effectively deprived of his Sixth Amendment
right, which we hold he did not waive, to confront and
cross-examine witnesses against him. *Pointer v. Texas,* 380
U. S. 400 (1965); *Glasser v. United States,* 315 U. S. 60, 70-71
(1941); *Johnson v. Zerbst,* 304 U. S. 458 (1938). As the
"stipulation" was virtually all the evidence presented
against appellant regarding the larceny of the Mierzwinski
vehicle, the error was obviously not harmless. The
conviction under Indictment No. 50588 will therefore be
reversed and the case remanded for a new trial thereunder.

Appellant argues further that the erroneous admission of
the fingerprint identification was "so excessively

prejudicial" that it was bound to have prejudicially affected the jury in determining appellant's guilt or innocence of the other charges against him as well. We see no merit to the argument under the circumstances. Appellant cites no authority, and we know of none, for the proposition that where, as here, the accused has not sought or been denied a severance under Rule 735 of several charges brought against him, an erroneous ruling on the admissibility of evidence as to one of the charges not affecting the admissibility of evidence as to the other charges, is a ground for affecting the judgment on the other charges.

## III

### *Appellant's Possession of Stolen Property*

The Oldsmobile in which appellant was apprehended at 9:45 P. M. on 11 December 1974 was owned by Robert Jeffers. Appellant contends that "[h]is presence as a passenger in the automobile is insufficient to connect him to property stolen several hours before at other locations". As we have indicated, the hubcaps found in the trunk of the Oldsmobile were properly allowed in evidence to support the State's case against him for their larceny. Except for the due process contention, which we have already disposed of, *supra*, appellant does not contest that conviction (Count I of Indictment No. 50586).

In addition to the stolen hubcaps, there were also found in the trunk of the Oldsmobile the stolen articles which he was charged with receiving in Count II of Indictment No. 50587. The evidence shows that these articles were in a 1970 Ford belonging to Maude Edna Neilson at the time it was stolen from the Eudowood Plaza Shopping Center in Baltimore County sometime before 7:15 P. M. on 11 December 1974.

A knife and hatchet found on the rear floor of the Oldsmobile in which appellant was a passenger were shown by the evidence to have been in a 1969 Ford van owned by John Robert Meadowcroft, III, at the time it was stolen from the Towson Plaza parking lot on 11 December 1974 sometime between 7:30 P. M. and 8:00 P. M. These articles were

included among those appellant was charged with receiving in Count II of Indictment No. 50602.

The four elements of the offense of receiving stolen property are: 1) the property must be received; 2) it must, at the time of its receipt, be stolen property; 3) the receiver must have guilty knowledge that it is stolen property; and 4) his intent in receiving it must be fraudulent. *Jordan v. State,* 219 Md. 36, 43 (1959). Appellant argues that elements 1 and 3 are not shown by the evidence. We disagree.

In *Anglin v. State,* 244 Md. 652, at 656, (1966), the Court of Appeals said:

> "It has long been established in Maryland that, absent a satisfactory explanation, exclusive possession of recently stolen goods permits the drawing of an inference of fact strong enough to sustain a conviction that the possessor was the thief, or, if the circumstances revealed by the testimony so indicate, that he was the receiver of the stolen goods. [citations omitted]".

In *Boswell and Poe v. State,* 5 Md. App. 571 (1968) Judge Orth (now Chief Judge) speaking for this Court said at 578-579:

> "In *Anglin v. State,* 244 Md. 652 at 656 the Court used the word 'exclusive' in stating the rule but in a number of cases after *Jordan* there was no reference to the requirement of the exclusiveness of the possession. This Court, in stating the rule, has at times used the word 'exclusive' as to the possession and at times made no reference to it. We think it clear that to support the inference the possession must be personal and with a distinct, implied, or express assertion of property by the exercise of complete dominion and right of disposal. A mere constructive possession is not enough; the accused will not be presumed to have stolen articles which he does not know he possesses. It is in the sense of a personal possession and an assertion of

property, express, or implied by the exercise of dominion and right of disposal, that the possession is exclusive. *So the possession of stolen property is exclusive if it shows exclusion of all persons who are not parties to the crime, although as to accomplices, the possession of one is the possession of all.* See 3 *Underhill's Criminal Evidence* (1957) § 600, p. 1461. Thus, the possession to be exclusive, need not necessarily be in one person and may be a joint possession of several persons. *Grimes v. State,* 4 Md. App. 607. The term 'exclusive', like the term 'recent' is a relative one, and its meaning as applied to a given case will vary with the circumstances of the case. 1 *Wharton's Criminal Evidence,* 12th Ed., Anderson, § 135, pp. 257-258." (Emphasis added.)

In the instant case, it is clear that Robert Jeffers had "possession" of the stolen articles found in his Oldsmobile automobile a short time after the Neilson and Meadowcroft vehicles were stolen and from which the stolen articles had obviously been taken. Although appellant denied any implication in the car thefts, he never specifically denied any guilty knowledge of the presence of the stolen articles in the Oldsmobile in which he was apprehended. Moreover, he specifically admitted that he had been in the Oldsmobile with Jeffers on the night of 11 December 1974 since "about eight [o'clock], something like that". In addition, there was evidence from the appellant himself that a substantial part of his income was gained from acting as a "fence" and selling "hot automobile parts".

In the circumstances, we hold that the evidence was legally sufficient for the jury to have concluded that appellant had joint exclusive possession of the stolen articles and that he knew they were stolen. As said by this Court in *Graham v. State,* 6 Md. App. 458 (1969) at 463: "The [trier of fact] is under no obligation to believe the story of appellant, *Hale v. State* [5 Md. App. 205]. The credibility of the witnesses is a matter for the trier of fact. *Jones v. State* [5 Md. App. 180], *Richardson v. State,* 5 Md. App. 719, 722, 249 A. 2d 508".

## IV

*Sufficiency of the Evidence for Conviction of
Larceny of Two Lincoln Automobiles*

### (a)

Count II of Indictment No. 50585 charged appellant with stealing Eileen Colvin's white 1972 Lincoln Continental. The evidence showed that the car was stolen from the Glenmont Towers parking lot in Baltimore County on 11 November 1974. No items from the car were connected with the appellant in any way. The only evidence connecting appellant with the theft of the car was the testimony of Detective Freburger, who testified that appellant had orally "described several vehicles, one being a green Continental, the other being a white Continental, both of them stolen from the Glenmont Tower area. Mr. McLaurin advised me he was implicated in these auto thefts ..." On cross-examination, however, Detective Freburger conceded that appellant admitted to "stealing *one* of them. He couldn't distinguish which one. However, he was able to describe both of them that were stolen that night". At trial appellant denied stealing either of the cars, implicating instead one Ozzie Hawkins in an effort to help the police "the best I could". We think this evidence too meager to establish appellant's criminal agency with respect to larceny of the Colvin automobile. The conviction will therefore be reversed.

### (b)

Count I of Indictment No. 50590 charged appellant with stealing a green 1972 Continental automobile belonging to James Henry Farrell. The evidence showed this was the other Continental stolen from the Glenmont Towers parking lot on the evening of 11 November 1974. Here, a tool box shown to have been in the car at the time it was stolen was found in appellant's garage as the result of a consent search of the garage on 18 December 1974. That evidence effectively cleared up the mystery as to which of the two cars appellant had stolen and, together with appellant's oral

confession, was clearly sufficient to support his conviction of Count I of Indictment No. 50590.

Appellant argues that, since the car was recovered on another parking lot only a short distance away from Glenmont Towers, there was insufficient evidence to support a finding that appellant intended "to permanently deprive the owner" of his property. In the circumstances, we find this argument specious and deserving of no further comment except to say:

> "[t]he matter of the appellant's intention was a question of fact for the determination of the jury and it, not this Court, weighs the evidence in reaching the determination". *Sizemore v. State*, 5 Md. App. 507, 518 (1968).

> > *Judgments in Indictments Nos. 50586, 50587, 50590 and 50602 affirmed.*

> > *Judgments in Indictments Nos. 50585 and 50588 reversed and remanded for new trial.*