543 A.2d 851

David Wayne **SPENCER**

v.

**STATE of Maryland.**

**No. 1406, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

July 11, 1988.

Laurie R. Gitajn, Assigned Public Defender, Rockville (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Christian J. Jensen, State's Atty. for Caroline County, Denton, on the brief), for appellee.

Argued before BISHOP, ALPERT, and ROBERT M. BELL, JJ.

ALPERT, Judge.

David Wayne Spencer, the appellant herein, was a driver for Williams' Refrigerated Southern Cold Storage (Williams). On September 5, 1985, Williams received 75 cases of frozen lobster tails. Williams was to hold the lobsters in refrigerated compartments for one week until a truck came to transport them to Michigan. The last time anyone remembered seeing the lobsters was on September 11. On September 12 someone at Williams discovered that the lobsters were missing. Evidence at trial showed that appellant, another man named Ben Holden, and numerous other employees worked in the warehouse area around the time the lobsters must have been stolen.

Witnesses presented the following circumstantial evidence to tie appellant to the theft. A former employee of the company testified that on September 16 he observed appellant and Ben Holden drive by his house, toward Denton, in a black El Camino with a U–Haul trailer attached. An employee of a U–Haul rental company in Denton testi-

fied that his company rented to appellant a U–Haul which appellant attached to a black Ford (that the employee thought was a Ranchero). A police officer testified that he examined a U–Haul rental agreement which contained David Spencer's name and driver's license number. Two employees of a dry ice company in Seaford, Delaware testified that appellant and another man bought dry ice to put in a U–Haul trailer. The witnesses said that the men had offered to sell them lobster. One of the men testified that he observed boxes in the trailer marked "Rock lobster tails." The witnesses also testified that the boxes in the trailer looked similar to boxes of lobster tails in a photograph that was shown to him on the witness stand. The photograph depicted boxes of lobster tails that came from the same company that had originally sent the lobster tails and that purported to be from the same lot number.

A search of the U–Haul trailer that was believed to be the one appellant rented revealed black strapping material that was similar in appearance to the strapping material that was wrapped around the sample boxes. The defense presented evidence from F.B.I. investigators, however, that there were significant differences in the composition, manufacturing process, and the tool marks, between the straps that were found in the U–Haul and the straps on the sample boxes.

A jury in the Circuit Court for Caroline County found appellant guilty of grand theft. He was sentenced to five years in the Maryland Division of Correction, with a recommendation that restitution be a condition of any parole.

Appellant then filed this appeal and raises the following questions for our review:

> I. Did the trial court deny Appellant a fair trial by accusing Appellant's counsel of "sandbagging" in front of the jury, demanding that she provide an explanation to the jurors, and by recalling a State's witness as a court's witness *sua sponte* in connection with the accusation?

II. Did the court err in failing to grant Appellant's Motion for Judgment of Acquittal because the State failed to prove venue in Caroline County and jurisdiction in the State of Maryland?

III. Did the court err in instructing the the jury that "the defendant has the burden of giving a reasonable explanation of how the goods came into his possession"?

Because the trial judge's admonishment of defense counsel deprived appellant of his right to a fair trial, we shall reverse and remand for a new trial. We shall, however, also address appellant's second and third assignments of error for they may resurface at trial on remand.

## I.

The State attempted to prove that appellant rented a U–Haul trailer from a business in Denton called "Good Ones." A trooper was permitted to testify over objection that he examined a rental receipt from Good Ones and that the receipt showed that David Spencer, the appellant, had rented a trailer from Good Ones. When the defense objected, the State and the judge immediately assumed that the defense was raising a Best Evidence objection. The State then proffered that the officer's recollection was the best evidence because "the records don't exist." The court then overruled the objection because "the State's Attorney has assured me, the original piece of paper, or copies of it are not available." Defense counsel then asked to approach the bench, and the request was immediately denied. Appellant's attorney then said: "Your Honor, *even if it were available, it's not a business record* ... nobody has testified about any records that were kept. ... Mr. Lowell Goodman is the one who rented it, and there's nobody to testify as to who was there and who filled it out." (Emphasis added.) Thus, counsel was contending that the State had to establish that the records from which the trooper took notes were kept in the ordinary course of business before he could testify as to what he read in the records.

The judge, incorrectly we believe, overruled her objection. In any event, the trooper testified that David Spencer rented the trailer.

On cross-examination of the trooper, the defense produced a carbon copy of the rental receipt that appellant's counsel, at oral argument, stated was received by trial counsel sometime during the trooper's testimony.[1] When counsel moved for admission of the rental agreement, the State objected and the court sustained the objection. The following colloquy then occurred between defense counsel and the judge:

[Defense Counsel]: We've heard a lot of talk about the best evidence Your Honor, and there it is.

THE COURT: Well, but [Defense Counsel], in all fairness ... why didn't you give Mr. Towers [who worked for Good Ones and was sometimes responsible for renting U–Haul trailers to customers] that and ask him if he could identify it, if that's what it was supposed to be ... I mean ... the witness is gone now, we could have all asked him this if we had it ... he was the one that could say, "No, that's ..."

[Defense Counsel]: I'm sure the Court does not mean to criticize my trial tactics in front of the jury.

THE COURT: I do. *I think you sat there and sand-bagged us to be frank about it, and I think the jury and I are entitled to know why.*

[Defense Counsel]: *May we approach the bench?*

THE COURT: *No* ... obviously you can't introduce it through him, he can't identify it, but the person who could ... but if you want it in evidence, he objects ... I'll summons Mr. Towers back here today or tomorrow, and we'll put it in evidence through a person who can. Is that your problem ... that this witness ...

---

**1.** It appears that the defense produced the document to establish that the rental agreement which the trooper observed was undated and thus cast doubt on the State's inference that appellant rented the trailer around the time the lobsters were stolen.

[Asst. State's Att'y]: Certainly for today, and right now, Your Honor, certainly my problem is that it can't go through.

THE COURT: Well for whatever it's worth, I think the jury should see it, and you can't introduce it through a person who can't authenticate it, or identify it ... Mr. Towers could and he was here, and he could still be here ... he lives around Denton somewhere doesn't he? All right, we'll get him back in then ... so for present that's there, your objection is sustained, and I'll come back to it.

[Asst. State's Atty']: Thank you.

[Defense Counsel]: *May we approach the bench?*

THE COURT: *No, but you can answer my question if you want ... otherwise, we'll just leave it there.*

[Defense Counsel]: I would move for a mistrial Your Honor.

THE COURT: Denied ... next question.

[Defense Counsel]: I have no other questions.

 A trial judge's position in the judicial process requires him or her to perform many functions. He must act upon objections, instruct the jury, insure that the trial is conducted in an orderly way and, in general, make sure that justice is done. *See United States v. Hickman,* 592 F.2d 931, 933 (6th Cir.1979). He must, however, discharge his duties in a "calmly judicial, dispassionate and impartial" manner. *Id.,* citing *Frantz v. United States,* 62 F.2d 737, 739 (6th Cir.1933). This is imperative in order to protect the defendant's right to a fair trial inasmuch as the judge's position as the presiding judge gives him tremendous influence over the jury. *Id.*

It is, however, often difficult to second-guess the actions of a trial judge. As the Second Circuit noted in *United States v. Weiss:*

Judges, while expected to possess more than the average amount of self-restraint, are still only human. They do not possess limitless ability, once passion is aroused, to resist provocation.

491 F.2d 460, 468 (2d Cir.1974), *U.S. cert. denied,* 419 U.S.
833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974). Thus, courts have
generally held that "misconduct by defense counsel may
properly be taken into account ... in determining whether a
defendant was prejudiced by the judge's response." *United States v. Robinson,* 635 F.2d 981, 985 (2d Cir.1980), *U.S.
cert. denied,* 451 U.S. 992, 101 S.Ct. 2333, 68 L.Ed.2d 852
(1981). *See also United States v. Pisani,* 773 F.2d 397 (2d
Cir.1985); *United States v. Beaty,* 722 F.2d 1090, 1093 (3d
Cir.1983).

The question which we must answer, then, is whether,
under the totality of the circumstances, the judge's behavior
was "so prejudicial as to deprive defendant ... of a fair, as
opposed to a perfect trial." *See Beaty,* 722 F.2d at 1093.
As the Court of Appeals of this State explained in *Bryant
v. State,* 207 Md. 565, 115 A.2d 502 (1955):

Unless there is some clear showing that the judge's
statements influenced the jury against the defendant, the
mere fact that the trial was conducted in an impatient and
brusque way does not justify a reversal of the judgment.

*Id.* at 585, 115 A.2d 502, citing *Apple v. State,* 190 Md. 661,
59 A.2d 509 (1948).

We conclude that, under the totality of the circum-
stances, the trial judge's remarks to defense counsel in
front of the jury denied appellant a fair trial. The com-
ments made from the bench and directed to defense counsel
directly impugned her integrity; they indicated that she
was dishonest with the court and the jury. Such state-
ments are likely to be devastating to the defense and, thus,
should not be made in front of the jury. They cast a dark
shadow over the defendant and the entire defense case.
Thus, we conclude that, under the totality of the circum-
stances, the attack on defense counsel in front of the jury
was reversible error because it denied appellant a fair trial.
*Cf. Ferrell v. State,* 73 Md.App. 627, 536 A.2d 99, *cert.
granted,* 312 Md. 427, 540 A.2d 489 (1988); *McMillian v.
State,* 65 Md.App. 21, 499 A.2d 192 (1985). Unlike the
situation posed by *Ferrell* where the defendant argued his

position was undercut by the judge throughout the trial and we found that it had not been so prejudicial as to deny the defendant a fair trial, this one encounter between the defense and the bench immediately discredited the defense. Consequently, the comments would be reversible error, even had counsel violated her ethical duty toward the court, which we do not so hold.[2]

---

**2.** For the edification of the bench and bar, we briefly address the propriety of defense counsel's tactics. Preliminarily, we point out that defense counsel requested to be heard at the bench several times but her request was denied. It would be patently unfair to chastise her for not informing the judge of her possession of the receipt when it is entirely possible that she attempted to do so. We also point out, however, without implying that counsel in this case was guilty of any ethical misconduct, that counsel has an unqualified obligation to be forthright with the court and cannot make an affirmative misstatement of the facts. If counsel had possession of the rental receipt at the time of the trooper's testimony, it would have been misleading for her to comment that "even if [the receipt] were available," it was otherwise inadmissible. Inasmuch as we were told at oral argument that trial counsel was not given the receipt until after the trooper testified as to its contents, her statement did not intentionally mislead the court and thus did not violate her duty of candor toward the court. *See Maryland Rules of Professional Conduct,* Rule 3.3 "Candor Toward the Tribunal."

The perplexing ethical problem highlighted by this case is: to what extent is an attorney, who is in possession of evidence that incriminates his client, obligated to submit it to the State, *sua sponte.* This is a controversial question on which we express no opinion today. Because they are instructive, we shall, however, explain some of the holdings of courts in other jurisdictions in order to inform the bench and bar of the nature of the problem.

The Fourth Circuit held in *In re Ryder,* 381 F.2d 713 (4th Cir.1967): "It is an abuse of a lawyer's professional responsibility knowingly to take possession of and secrete the fruits and instrumentalities of a crime." *Id.* at 714. The court adopted the opinion of the United States District Court for the Eastern District of Virginia, 263 F.Supp. 360 (1967), which suspended an attorney from the practice of law for concealing stolen money and a weapon used in an armed robbery with the intention of withholding it from the State until the trial was over. *See also Hitch v. Pima County Superior Court,* 146 Ariz. 588, 708 P.2d 72 (1985) (attorney who had victim's wristwatch was required to give it to the State, even without a subpoena); *People v. Meredith,* 29 Cal.3d 682, 175 Cal.Rptr. 612, 631 P.2d 46 (1981) (attorney who had private investigator obtain victim's partially burned wallet after learning where it was through client had obligation to turn it over to

## II.

Appellant also argues that the court erred by failing to grant appellant's motions for a judgment of acquittal on the grounds that the State failed to prove venue in Caroline County and jurisdiction in the State of Maryland. We disagree.

---

police); and *People v. Nash*, 418 Mich. 196, 341 N.W.2d 439 (1983) (attorney had obligation to turn over murder weapon to State).

An attorney's obligation to turn over incriminating evidence that comes into his possession has been held not to be limited to the fruits and instrumentalities of a crime. The District Court opinion in *Ryder* expressly limited its holding to "fruits and instrumentalities of a crime" because, under the law at that time "mere evidentiary items" could not be seized from a defendant even pursuant to a lawful search. 263 F.Supp. at 366. Thus, the court held that "mere evidentiary items" need not be turned over to the State. *Id.* The Supreme Court of the United States, in *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), however, held that any items of evidential value could be seized pursuant to a lawful search. Once the Supreme Court abolished this distinction for purposes of the Fourth Amendment, the validity of *Ryder* came into question.

In *Morrell v. State*, 575 P.2d 1200 (Alaska 1978), the Supreme Court of Alaska held that a defense attorney was required to turn over to the State a kidnapping plan, written by his client, that the attorney received from a third party. The *Morrell* court held that the Supreme Court's decision in *Hayden* limited the usefulness of the distinction between mere evidence and fruits and instrumentalities in the area of attorney-client privilege as well. The court went on to hold in *Morrell*:

> [A] criminal defense attorney must turn over to the prosecution real evidence that the attorney obtains from his client. Further, if the evidence is obtained from a non-client third party who is not acting for the client, then the [defense attorney's] privilege to refuse to testify concerning the manner in which the evidence was obtained is inapplicable.

575 P.2d at 1210. *See also Clutchette v. Rushen*, 770 F.2d 1469 (9th Cir.1985), *U.S. cert. denied*, 475 U.S. 1088, 106 S.Ct. 1474, 89 L.Ed.2d 729 (1986) (Defense attorney who obtained possession of receipts showing client had car reupholstered immediately after murder with which client was charged had obligation, once the receipts were removed from their original location, to give evidence to the State after attorney examined them).

Several law review articles are also enlightening and deserve reading by members of the bar. They include *"People v. Meredith:* The Attorney–Client Privilege and The Criminal Defendant's Constitutional Rights," 70 California Law Review 1048 (July 1982); and "Ethics, Law & Loyalty: The Attorney's Duty to Turn Over Incriminating Physical Evidence," 32 Stanford Law Review 977 (May 1980).

■ The Court of Appeals reiterated, in *McBurney v. State,* 280 Md. 21, 371 A.2d 129 (1977), the requirements necessary to establish jurisdiction and proper venue. Any circuit court in this State has jurisdiction over any criminal action committed in Maryland unless otherwise limited by law. *Id.* at 31, 371 A.2d 129. "Venue refers to a particular place or county in which a court of appropriate jurisdiction may properly hear and determine the case in the first instance." *Guarnera v. State,* 23 Md.App. 525, 528, 328 A.2d 327 (1974), *cert. denied,* 274 Md. 728 (1975), citing *Stewart v. State,* 21 Md.App. 346, 348, 319 A.2d 621 (1974), *aff'd,* 275 Md. 258, 340 A.2d 290 (1975). Venue "relates only to the place where either party may require the case to be tried ... and the question of jurisdiction of subject matter is not presented." *McBurney,* 280 Md. at 31, 371 A.2d 129. Thus, this court has held that an objection to venue must be raised timely or it is deemed waived. *See Lett v. State,* 51 Md.App. 668, 676, 445 A.2d 1050, *cert. denied,* 294 Md. 442 (1982); *Carter v. State,* 38 Md.App. 400, 405, 381 A.2d 309, *cert. denied,* 282 Md. 730 (1978). A motion objecting to venue is one of those mandatory motions that must be raised before trial, pursuant to Maryland Rule 4–252. *Id.* As the Court of Appeals explained:

> [V]enue is waivable in a criminal case, expressly or by failure to make a timely objection. [*Kisner v. State,* 209 Md. 524, 527, 122 A.2d 102 (1956).] Timely objection to venue is one interposed no later than the first pleading to the charge. *Id.* at 535 [122 A.2d 102].

*McBurney,* 280 Md. at 32–33, 371 A.2d 129.

Appellant interposed no objection either to the jurisdiction of the court or to the venue until the close of the State's case when appellant moved for judgment of acquittal on both of those grounds.

■ Appellant argues that the most the evidence could establish was that appellant unlawfully possessed the stolen

lobsters in Delaware.[3] He states: "[T]he only basis for a conviction was the evidence of Appellant's unlawful possession of stolen property in the State of Delaware. There is absolutely no evidence of any connection of Appellant with any unlawful activity in the State of Maryland...."

This contention is without merit. Although appellant argues that it is questionable whether the evidence presented during the State's case was adequate to establish that the crime was committed in Maryland,[4] we have no doubt that evidence introduced by the defense during presentation of its case established the locale of the crime. Two F.B.I. reports entered into evidence by the defense specified that the lobster tails were stolen from "Williams Refrigerated Express, Federalsburg, Maryland." Moreover, the rental receipt from the U–Haul rental company established that appellant rented a U–Haul trailer in Denton, Maryland. That was the trailer the State contended was used to carry the stolen lobsters into Delaware.

We reject appellant's claim that we should ignore the jurisdictional evidence that came in during the defense case. Appellant misconstrues the law by arguing that the issue before us is whether the trial judge erred when he denied appellant's motion for judgment of acquittal at the close of the State's case on the ground that the State failed to prove the jurisdiction of the Maryland courts. According to Rule 4–342, if a defendant moves for a judgment of acquittal at the close of the State's case and the motion is denied, the defendant withdraws the motion by presenting a defense.

---

3. This is apparently because there was testimony that witnesses at the ice company observed appellant with the stolen lobsters in Seaford, Delaware.

4. The State failed to ask any witness to identify the State in which the crime was committed, nor did any witness volunteer the information. The evidence presented during the State's case and which the State claims was sufficient to establish jurisdiction consisted of several references to "Denton" with no mention of the State, as well as several references to local roads and a phone call to the "Easton Barrack" of the "Maryland State Police" to report the crime.

When the motion is renewed at the close of all the evidence, the trial court is bound to look at all the evidence presented to the trier-of-fact, both by the State and by the defense. The question before this court, then, is whether, at the close of all the evidence, it was sufficiently proven that the crime occurred in Maryland. *See Brooks v. State*, 299 Md. 146, 149–50, n. 2, 472 A.2d 981 (1984). As we explained earlier, we have no doubt that the evidence was adequate.

Once it was proven that the lobsters were stolen in Maryland, there was circumstantial evidence that linked appellant to that theft even though no one saw him with the goods until he arrived in Delaware. The State linked appellant to the site of the theft, showed that appellant had access to the lobsters, and tied him to the rental of a U–Haul trailer in which the stolen lobsters were allegedly seen by a witness in nearby Delaware. This was adequate for a jury to be convinced beyond a reasonable doubt that appellant was guilty of theft of the lobsters from Williams.

■ Insofar as appellant challenges the venue of the action, it is clear that appellant failed to object to the court's venue prior to trial as required by Maryland Rule 4–252. Appellant argues, however, that he should be allowed to interpose a later objection, once it became clear when the State rested its case, that the State failed to establish the specific county in which the crime occurred. This argument flies in the face of the Rule, and *McBurney*, and the other cases that require that the objection be raised prior to trial.

### III.

■ Finally, appellant contends that the trial judge erred in instructing the jury that "the defendant has the burden of giving a reasonable explanation of how the goods came into his possession." Appellant made a timely objection to the instruction and now claims this erroneously placed the burden on him to prove himself innocent. Appellant characterizes this instruction as an instruction for a directed

verdict of guilty if the defendant failed to produce a reasonable explanation of his possession. Appellant also opines that this instruction "may be interpreted by the jury as requiring the defendant himself to testify at trial."

Maryland case law is clear that a finder of fact might infer from appellant's failure to explain his possession of stolen goods that he was the thief. *See Brewer v. Mele*, 267 Md. 437, 449, 298 A.2d 156 (1972).

> We have long and consistently held that exclusive possession of recently stolen goods, absent a satisfactory explanation, permits the drawing of an inference of fact strong enough to sustain a conviction that the possessor was the thief....

*Id.*

Appellant claims, however, that the instruction *sub judice* erroneously shifted to him the burden of proving his innocence once his possession of the stolen goods was established. He argues that, at most, he had the burden of producing *some* evidence to rebut the inference. We note, however, that the instruction given in this case nearly parallels that approved in *Dinkins v. State*, 29 Md.App. 577, 586, 349 A.2d 676, *affirmed*, 278 Md. 238, 362 A.2d 91 (1976). The trial court in *Dinkins* similarly instructed the jury that, absent a satisfactory explanation, possession of recently stolen property may give rise to an inference that the possessor was guilty of stealing the property. The judge then went on to explain the defendant's burden of rebutting the inference:

> Once this inference arises, the burden is cast upon the possessor of the goods to give a reasonable explanation of how they came to his possession.

*Dinkins*, 29 Md.App. at 586, 349 A.2d 676. Speaking for this court, Judge Orth held that the instruction did not violate the defendant's privilege against self-incrimination, nor did it violate his right to a presumption of innocence. *Id.* at 588, 590–91, 349 A.2d 676. The Court of Appeals granted certiorari and then adopted this court's opinion.

Under the authority of *Dinkins,* we perceive no error in the instruction.

JUDGMENT REVERSED AND CASE REMANDED FOR A NEW TRIAL; COSTS TO BE PAID BY CAROLINE COUNTY.