695 A.2d 575

**Latina Rose SMITH**

v.

**STATE of Maryland.**

**No. 1011, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

June 25, 1997.

**44**

Sherrie B. Glaser, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Celia Anderson Davis, Asst. Atty. Gen., Baltimore (J. Joseph Curran, Jr., Baltimore and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Submitted before HARRELL and THIEME, JJ., and THEODORE G. BLOOM, Judge (retired), Specially Assigned.

HARRELL, Judge.

Appellant, Latina Rose Smith, seeks reversal of her first-degree murder and robbery convictions rendered by a Baltimore County jury. The same jury acquitted her of robbery with a deadly or dangerous weapon. Her appeal is dependent

on our review of the propriety of the trial court's denial of her Motion to Transfer Venue [1]. We shall affirm.

## ISSUES

In reflecting on appellant's single appellate contention [2], we discern that she actually presented this panel with a more complex set of sequential questions that we have restructured below for purposes of analysis:

I. What was the proper allocation of the burden of production of evidence at the venue hearing?

II. What was the proper allocation of the burden of proof at the venue hearing?

III. What standard of proof was applicable at the venue hearing?

IV. What discrete facts were required to be demonstrated in order to establish the proper venue for appellant's murder trial pursuant to Md. Ann.Code art. 27, § 586A?

V. What discrete facts were required to be demonstrated in order to establish proper venue for appellant's murder trial pursuant to Md. Ann.Code art. 27, § 590?

VI. Did appellant produce evidence sufficient to generate the issue of venue for the murder charges?

VII. Did the State sufficiently prove proper venue at the venue hearing for the murder charges?

VIII. Was venue proper in Baltimore County for appellant's robbery trial?

## FACTS

We repeat here only those facts deemed either relevant to the trial judge's venue determination or contextually support-

---

1. Appellant acknowledged, at the hearing on the issue before the circuit court, that her motion was incorrectly titled. Essentially, appellant sought dismissal for improper venue and not transfer of venue.

2. In her brief, appellant framed but a single question for our pondering: Did the court err in refusing to transfer venue to Baltimore City?

ive. Appellants' Motion to Transfer Venue requested, in pertinent part, that

this Honorable Court pursuant to [Md. Ann.Code art. 27, § 586A] transfer this case to its proper jurisdiction and in support thereof states the following:

1. That the Defendant has been charged with first degree murder and other related offenses resulting from an event that occurred on [10 February] 1995.

2. The Defendant was a back seat passenger in a [car].

3. The State alleges that the Defendant feloniously murdered the victim, Myra Harrison.

4. This was brought to the attention of the authorities by an eyewitness who allegedly observed the Defendant placing the [victim's] body at or near Carroll Road, one-fourth mile south of Sparks Road [in] Baltimore County.

5. That the State further alleges that the Defendant and Co-Defendant, Bronwynn Byers, picked up the alleged victim, Myra Harrison, from her employment at Johns Hopkins Hospital [in] Baltimore City.

6. The parties then proceeded to drive on the [Jones Falls Expressway or] JFX. The alleged felonious blows occurred on the JFX at or near Cold Spring Lane.

7. That this location is clearly within the Baltimore City limits....

At the venue hearing, appellant offered the testimony of William Matthews, a Survey Computations Supervisor with the Department of Transportation. He testified that the Cold Spring Lane interchange on the JFX is approximately two to two and one-half miles south of the Baltimore County–Baltimore City boundary and within the city limits. He further testified that the Northern Parkway exit is closer to the boundary than the Cold Spring Lane exit, yet within the confines of the city.

Appellant then testified regarding the location of the occurrences of 10 February 1994. She stated that, at approximately 7:15 a.m., she and Ms. Byers drove to the Johns Hopkins

Hospital to meet the victim, Myra Harrison. Appellant sat in the back seat, while the victim was a passenger in the front seat. Ms. Byers drove the vehicle. Soon thereafter, the vehicle entered the northbound lanes of the JFX. A fight quickly ensued between Harrison and appellant. Appellant admitted that, during the altercation, she struck the victim but never admitted to using a knife. Apparently, Ms. Byers pulled the car to the side of the JFX, "a little past" the Northern Parkway exit after Harrison complained that she could not breathe. During the interlude, appellant noticed that the victim was "slumped" over and had blood on her chest. Appellant, despite her lack of medical training or experience, checked Harrison's wrist and found no pulse. After waiting a few minutes, the women continued north on the JFX into Baltimore County.

The State, in its rebuttal, offered only the testimony of Baltimore County Police Lieutenant Bruce McGuire. Lt. McGuire, during a 10 February 1994 routine patrol, was driving along Carroll Road in Baltimore County. After observing several citizens along the side of that road, Lt. McGuire stopped and alighted from his vehicle at approximately 8:43 a.m. The officer then observed and inspected the body of Myra Harrison where it lay on the side of Carroll Road. He discerned the following regarding the condition of the body.

Well, it was inside a green plastic bag and the feet were sticking out. And when you couldn't—you could actually look inside. And when you look [sic] inside you could see an area of the chest; you could see some type of wound, although I couldn't tell what it was. I couldn't see her face, but there was no blood coming out of the wound and there was absolutely no movement on the body.

Subsequent to argument by counsel, the judge stated:

What I have before me today is the testimony of Mr. William Matthews, who was the expert called by the Defendant on the motion to establish where the City line-County line location is; I further have testimony from the Defen-

dant, herself, Latina Rose Smith, indicating that she and the victim were in a physical altercation at times when a vehicle you (sic) which she says was operated by Miss Byers was on the [JFX] in a northbound direction toward Baltimore County; I also have testimony from Ms. Smith that she was involved in a fistfight with the victim, and that is the only evidence of force that I have before me. I do not have before me any evidence of a stabbing; I don't have any evidence of an exact cause of death or instrumentality utilized. I'm assuming that Miss Harrison died based upon the testimony of the Police Officer who was called by the State and his description of a body that was found in Baltimore County, but I do not know what, the cause of death, what caused the death of Miss Harrison. And as, as I have indicated, the only testimony that I have regarding any blows struck by Miss Smith on the victim, Miss Harrison, is her description of a fistfight. There's never a description of any kind of weapon, such as a knife used. [Appellant's counsel], in her argument, has referred to a stabbing, but I don't know that any stabbing, in fact, ever took place from the testimony ... that I have before me.

The trial judge, faced with a dearth of evidence relevant to the determination confronting her, was constrained to make only limited factual conclusions. The trial judge apparently determined that a mobile fracas between appellant and the victim occurred on the JFX and the victim's lifeless body was found in Baltimore County. Based upon the evidence adduced at the hearing, we conclude that the court's determination of these facts was not clearly erroneous.

The court did not consider any expert evidence regarding the cause of death.[3] The trial judge received some evidence

---

3. Our independent review of the record revealed that a written statement from the mortician who removed the body from the crime scene was in the court file at the time of the hearing. That report, unchallenged by appellant, revealed that the victim's body did have multiple "knife wounds in the chest, arm and back areas of her body." It is obvious from the judge's oral opinion rendered at the venue hearing that she did not consider the contents of this report. Therefore,

concerning the victim's death from two lay sources. First, appellant testified that the victim, while still in Baltimore City, had no apparent pulse, had blood on her chest, and assumed a "slumped" posture after the fistfight. Lt. McGuire, on the other hand, testified that he found the victim's body in Baltimore County with chest wounds.

## STANDARDS OF REVIEW

 As implied, *supra*, we review the judge's decision to determine if her factual conclusions were clearly erroneous. *See Martin v. State*, 113 Md.App. 190, 251, 686 A.2d 1130 (1996) (concluding that trial judge's factual determinations regarding venue were not clearly erroneous). In the instant case, we divine that the trial judge's limited factual conclusions were not clearly erroneous and were supported by the evidence adduced at the hearing.[4]

## ANALYSIS

 Maryland courts have consistently drawn a distinction between venue and jurisdiction. Much of the reasoning employed in this opinion turns on that distinction. Venue is the place where the trial may properly occur. *See McBurney v. State*, 280 Md. 21, 31, 371 A.2d 129 (1977). Jurisdiction, on the other hand, refers to the power of the court to adjudicate the matter before it. *Id.* Some sovereigns' courts use the term "jurisdiction" or "territorial jurisdiction" to connote the aggregate of jurisdiction and venue. We do not.

 Appellant only questioned the proper venue for her trial. Appellant does not object to the jurisdiction of the Circuit Court for Baltimore County. A circuit court of this State has full common law jurisdiction in all criminal trials for

---

although we might properly do so, we shall not consider the report now. We note that, had we done so, the evidence of knife wounds contained therein supports the State's appellate position.

4. We consider, of course, only that evidence produced at the hearing. Neither the parties nor the judge, at a venue hearing, is required to conduct a full-scale trial on the merits.

crimes committed in Maryland except when limited by statute. Md.Code Ann., Cts. & Jud. Proc. § 1–501. "It is assumed, necessarily, in any question as to venue, that the court of such a place has jurisdiction over the subject matter". *McBurney*, 280 Md. at 31 n. 8, 371 A.2d 129 (quoting 1 *Wharton's Criminal Procedure* (12th ed.1974) § 36). Appellant argued that venue was proper in Baltimore City, thereby conceding proper jurisdiction in Maryland. Therefore, we shall not consider any subject matter jurisdictional question. Of course, if presented with facts raising such jurisdictional issues, we would be compelled to consider such without regard to appellant's failure to object. Jurisdiction over the subject matter of the trial is not susceptible to waiver and may be raised by this Court, or any other, *sua sponte. See McDonald v. State*, 61 Md.App. 461, 468, 487 A.2d 306 (1985).

## I.

The parties, in their briefs, have ignored the burdens of proof and production applicable at the venue hearing in this case. Perhaps one reason for this omission is that no Maryland case has specifically identified the allocation of such. As these matters are fundamental to any analysis of the trial judge's venue decision, we first turn to the task of divining the burdens of production shouldered by appellant at the venue hearing.

Improper venue is a "defense or objection" which, under Md. Rule 4–252, must be raised by motion before trial. If the issue is not raised in a timely motion it is waived. *See, e.g., Spencer v. State*, 76 Md.App. 71, 543 A.2d 851 (1988); *Lett v. State*, 51 Md.App. 668, 445 A.2d 1050 (1982); *see also McBurney*, 280 Md. at 32–33, 371 A.2d 129. Therefore, the burden is initially placed upon the criminal defendant to raise the issue. That initial obligation, however, is not the extent of a defendant's burden. A criminal defendant must do more than make a bare allegation of improper venue. The burden of production of evidence is also initially upon the defendant.

That conclusion is founded upon existing case law and the correlation between jurisdiction and venue.

In *McDonald v. State*, 61 Md.App. 461, 469, 487 A.2d 306 (1985), we determined that an appellant claiming a lack of jurisdiction was charged with the burden of producing sufficient evidence to generate the issue. As discussed previously, jurisdiction is the power of the court to hear the case. Venue, alternatively, pertains to the place of trial. *See, id.* at 467–68 n. 1, 487 A.2d 306; *Guarnera v. State*, 23 Md.App. 525, 528, 328 A.2d 327 (1974). Jurisdiction and venue, although both founded in locality, differ. Despite this discord, we believe ultimately, but not reflexively, that the same burden of production applicable to jurisdictional queries should be assigned to defendants claiming improper venue.

We first note, despite appellant's averments to the contrary, that proper venue is not a fundamental right.[5] Indeed, venue may be waived by a criminal defendant. *See Spencer, supra.* Jurisdiction, on the other hand, cannot be waived by a criminal defendant or conferred upon the court by consent. "It is fundamental that jurisdiction resides solely in the courts of the state where the crime is committed." *McDonald,* 61 Md.App. at 468, 487 A.2d 306 (citing as authority, *inter alia, Huntington v. Attrill,* 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892); *Urciolo v. State,* 272 Md. 607, 325 A.2d 878 (1974)). Essentially, protection of a defendant's right to proper jurisdiction is deemed more precious than securing her right to proper venue. Nevertheless, in *McDonald,* we effectively decided that, despite its fundamental nature, the burden

---

5. Appellant founds her contention that venue is a fundamental right upon art. 20 of the Maryland Declaration of Rights. That provision dictates "[that] the trial of facts, where they arise, is one of the greatest securities of the lives, liberties and estate of the People." Despite that grandiose verbiage, the common law necessity for trial in the county of the commission of a crime is not a fundamental right or requirement. *McBurney v. State,* 280 Md. 21, 33, 371 A.2d 129 (1977); *Kisner v. State,* 209 Md. 524, 531, 122 A.2d 102 (1956). It may be altered by the legislature and may be waived, either expressly or by failure to make a timely objection. *Id.* at 527, 122 A.2d 102; *Spencer v. State,* 76 Md.App. 71, 543 A.2d 851 (1988).

of production of evidence regarding jurisdiction rested square-
ly upon the defendant. We conclude that a defendant object-
ing to the non-fundamental aspect of venue should face a like
burden of production. Therefore, we conclude that it is not
erroneous for a trial judge to require a defendant to meet an
initial burden of production at a venue hearing. Appellant, in
the instant case, was required to adduce some evidence of the
facts essential to the venue determination.

■■■■■ Of course, the evidence produced may be direct or
circumstantial. The situs of a crime, for jurisdictional pur-
poses, may be established by circumstantial evidence. *Breed-
ing v. State*, 220 Md. 193, 151 A.2d 743 (1959); *McDonald*, 61
Md.App. at 468, 487 A.2d 306. Again, despite the distinction
between the terms jurisdiction and venue, *McDonald*, 61
Md.App. at 467–68 n. 1, 487 A.2d 306.; *State v. Jones*, 51
Md.App. 321, 323–24, 443 A.2d 967 (1982), both concepts rely
upon a proffer of evidence regarding the *locus criminis*, or
location of the crime. *McDonald, supra. A fortiori*, circum-
stantial evidence may also be used as evidence to establish the
*locus criminis* for venue purposes. Therefore, Ms. Smith was
required to produce some relevant evidence, direct or circum-
stantial, of improper venue.

## II.

■■■■ Because the State is responsible for selecting the
place of trial, it is logical that it should be required to justify
its selection after the issue is placed in dispute properly by a
criminal defendant. Our review of Maryland cases, and those
of other states, did not reveal a single circumstance requiring
or suggesting that it was the burden of a defendant to prove
proper venue. Alternatively, we unearthed scores of cases
assessing that burden to the State. *See 1 Wharton's Criminal
Procedure* § 34, (13th ed. 1989 & Supp.1996); 2 Wayne R.
LaFave & Jerold H. Israel, *Criminal Procedure* § 16.1(c),
(1984); Annotation, *Comment Note—Necessity of Proving
Venue or Territorial Jurisdiction of Criminal Offense Beyond
Reasonable Doubt*, 67 A.L.R.3d 988 (1975 & Supp.1996).

Therefore, we conclude that the State shoulders the burden of proof of venue. In the instant case, if the defendant cleared the initial production hurdle, the State was then required to prove venue.

## III.

Although the State must prove proper venue, it need do so only by a preponderance of the evidence. Our assessment of that particular standard is founded upon an analysis of persuasive cases from other states addressing the same issue. Several states have decided the issue and apparently are split as to the appropriate standard. Some assign a "beyond a reasonable doubt" standard although others merely require venue to be proven "by a preponderance of the evidence". We discern one thread consistently found throughout these venue cases. The correlation between venue and the essential components of the crime charged is the determinative factor. Specifically, the standard of proof applicable to a venue determination turns upon the status of criminal venue, under the laws of the sovereign, as an element of the crime charged. States that require that venue be proved beyond a reasonable doubt maintain "that venue is a material fact or issue in a criminal prosecution." *Necessity of Proving Venue or Territorial Jurisdiction of Criminal Offense Beyond a Reasonable Doubt, supra* at 998. Alternatively, "those jurisdictions which adhere to the rule that venue of a crime need not be proved beyond a reasonable doubt often propound as a rationale for this rule the view that venue is not an element or part of the offense charged." *Id.* at 1003–04.

We find persuasive the rationale employed by numerous states that have applied a preponderance of the evidence standard. For example, in *State v. True,* 330 A.2d 787 (Me. 1975), the court decided that venue was not an essential element of a crime. *Id.* at 791. A determinative factor in that case was the distinction between jurisdiction and venue. The court determined that jurisdiction, which must be proven beyond a reasonable doubt, was of a greater gravity than venue. *Id.* The Court further determined that the "essential

rights of a defendant are satisfactorily protected if [venue] is decided by a fair preponderance of the evidence." *Id.* at 792.

Likewise, in *State v. Brown*, 97 R.I. 95, 196 A.2d 138, 141 (1963), the court decided that

It is incumbent upon the State to prove beyond a reasonable doubt the existence of every essential element of the offense charged, and at no time is the defendant under obligation to offer evidence to disprove the existence of such elements.... It is true, of course, that the State in a criminal prosecution must establish the place at which the offense charged was committed in order to establish venue. However, this ... not being an element of the offense ... need not be proven beyond a reasonable doubt.

In *State v. Roblow*, 623 So.2d 51 (La.App.1993), a court also determined that venue was not an element of the crime. In *Roblow*, however, the basis for that decision rested upon Louisiana's mandatory preliminary motion regarding venue. Simply put, Louisiana defendants, like those in Maryland, waive the issue of venue if they fail to file a timely motion objecting to venue. Venue, because of its susceptibility to waiver, was deemed not to be an essential element of the crime charged. *Id.* at 55.

As we have established, Maryland does not consider venue to be a fundamental right or requirement. *McBurney*, 280 Md. at 33, 371 A.2d 129; *Kisner v. State*, 209 Md. 524, 531, 122 A.2d 102 (1956); *Spencer v. State*, 76 Md.App. 71, 543 A.2d 851 (1988). In Maryland, venue requirements may be altered by the legislature and may be waived, either expressly or by failure to make a timely objection. *Id.* at 527, 122 A.2d 102. Jurisdiction, however, may not be waived nor may it be conferred by consent. "It is fundamental that jurisdiction resides solely in the courts of the state where the crime is committed." *McDonald*, 61 Md.App. at 468, 487 A.2d 306. Clearly, Maryland courts, like the *True*, *Brown*, and *Roblow* courts, treat jurisdiction with a greater amount of gravity than venue. Similarly, we shall conclude that a defendant's non-fundamental right to proper venue is not tarnished by holding

the State to a lesser degree of proof than is required for jurisdictional inquiries.

Yet another case, *State v. Dent,* 67 Wash.App. 656, 840 P.2d 202 (1992), decided that the importance given to venue by a state constitution did not render venue so vital that it requires the greatest standard of proof. Washington, like Maryland, has a constitutional provision enunciating the importance of venue.[6] Nevertheless, both States have determined that the state constitutional provision does not render venue a fundamental right of an accused. The Washington court decided that venue is neither a fundamental right nor an element of the crime. Thus, Washington allows the lesser standard of proof for its criminal venue determinations. We concur.

Finally, and perhaps most illustrative of the phenomenon, are two Iowa cases that provide a glimpse of the rationale employed by a court that first assessed a beyond a reasonable doubt standard and subsequently lessened that requirement. The change of heart stemmed from modified statutory treatment of venue manifested in the interim between the trials of the two cases. In both cases, the Iowa Supreme Court consistently acknowledged the split in the precedent of the various states. It also asserted its perceived basis for that split.

> [The d]ifference of position in the various jurisdictions passing on the question seems to be based on whether venue is regarded in that jurisdiction as being a material part of the offense or material allegation of the indictment on the one

---

6. The Washington State Constitution states, in pertinent part, that "[i]n criminal prosecutions the accused shall have the right ... to a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed...." Wash. Const. art. I, § 22. Maryland's Constitution states "[t]hat the trial of facts, where they arise, is one of the greatest securities of the lives, liberties and estate of the People." Md. Declaration of Rights art. 20. Arguably, the language of the Washington Constitution affords greater protection than that of the Maryland Constitution. The former sets forth a specific, enumerated right to proper venue. The latter merely makes a statement concerning the importance of the location of trial. *A fortiori,* if the lesser burden of proof is sufficient under the Washington Constitution, it should pass muster in Maryland.

hand or as not being an integral part or a material element of the offense on the other.

*State v. Wardenburg,* 261 Iowa 1395, 158 N.W.2d 147, 151 (1968); *see State v. Allen,* 293 N.W.2d 16, 20 (Iowa 1980) (noting the distinction drawn in *Wardenburg,* and intimating still valid).

The dichotomy demonstrated by the *Wardenburg* and *Allen* decisions exhibits how one state's supreme court addressed, and then altered, the standard of proof for venue determinations. In *Wardenburg,* the court decided that, in a prior case, *State v. Brooks,* 222 Iowa 651, 269 N.W. 875 (1936)[7], it had, at least inferentially, required venue to be proved beyond a reasonable doubt. As quoted above, the court also acknowledged that a split of authority had occurred in other states. Under the statute then in force, the *Wardenburg* court determined that venue was a "jurisdictional fact which the State must prove as a vital ingredient of any prosecution." *Wardenburg,* 158 N.W.2d at 151–52. Therefore, under the statute as it then existed, venue was such an integral part of the prosecution of a crime so as to require that it be proved by the strictest of evidentiary standards, i.e., beyond a reasonable doubt.

Twelve years later, and after enactment of a new venue statute, the court considered *State v. Allen, supra.* Under the new statute, venue was no longer considered jurisdictional. More important to our analysis, the new statute rendered

---

7. This *per curiam* decision actually founded its decision upon the "law of the case" doctrine. The trial judge had issued a jury instruction assessing to the State the burden of proving venue beyond a reasonable doubt. That instruction was not questioned by the State and, under Iowa law, became the law of the case. *State v. Brooks,* 222 Iowa 651, 269 N.W. 875, 876 (1936). The court did confirm that the venue statute (Section 13449, Code 1935), as it then existed, assessed the burden of proof to the State. It fell short, however, of defining the requisite standard of proof. Later, in *State v. Wardenburg,* 261 Iowa 1395, 158 N.W.2d 147 (1968), the Iowa Supreme Court again recognized the existence of that burden. In *Wardenburg,* however, the court went further, determining that the standard of proof for venue determinations was, in fact, beyond a reasonable doubt.

venue so incidental that it could be waived by the defendant's failure to object. Specifically, the court posited:

> [I]n *Wardenburg,* this court determined ... that venue must be proved beyond a reasonable doubt. Noting a split of authority elsewhere as to whether venue should be proved by a reasonable doubt or by a preponderance of the evidence, the stricter standard was chosen because of the view, justified by the statute then applicable, that venue was a jurisdictional fact and a vital ingredient of any prosecution.... [U]nder our current venue statute, *venue may no longer be considered jurisdictional; nor is it so vital that objections regarding it cannot be waived by failure to object before trial.* These reflections entice us to reevaluate our position on the standard of proof the State must meet in proving venue.

*Id.* at 19–20 (citations omitted) (emphasis added). The court continued with an analysis of the proper standard of proof for elements of a crime, i.e., beyond a reasonable doubt, and the existence of a lessened standard, i.e., by a preponderance of the evidence, for less vital factual determinations.

The *Allen* court acknowledged that certain facts, amounting to defenses, need to be proven, beyond a reasonable doubt, by the State not to exist. Such defenses include entrapment, *State v. Tomlinson,* 243 N.W.2d 551, 553 (Iowa 1976); insanity, *State v. Thomas,* 219 N.W.2d 3, 5 (Iowa 1974); and self-defense, *State v. Vick,* 205 N.W.2d 727, 731 (Iowa 1973). These facts, the court discerned, amounted to excuses or justification for the defendant's criminal behavior. "Unlike those defenses or the elements of a crime, venue does not relate to the guilt or innocence of the defendant." *Allen,* 293 N.W.2d at 20. Furthermore, the court contemplated other facts, less vital and procedural in nature, commonly decided at preliminary hearings by a mere preponderance of the evidence standard. For example, the court cited *State v. Williams,* 285 N.W.2d 248, 260 (Iowa 1979) (manifesting lower standard for demonstration of applicability of exception to the exclusionary rule) and *State v. Fetters,* 202 N.W.2d 84, 88 (Iowa 1972) (demonstrating that confession was voluntary at a pretrial

suppression hearing need only surmount the lesser standard of proof). *Allen*, 293 N.W.2d at 20. Venue, the *Allen* court decided, was more like these procedural issues and, therefore, need be proved only by a preponderance of the evidence.

We conclude from the foregoing that, in Maryland, venue, unless statutorily identified [8] as such, is not an element of a crime nor a defense relating to guilt or innocence. Generally, the State need only prove venue by a preponderance of the evidence. In Maryland, it is a basic tenet of criminal law that the prosecution must prove each element of a crime beyond a reasonable doubt. *Bane v. State*, 327 Md. 305, 609 A.2d 313 (1992); *State v. Grady*, 276 Md. 178, 345 A.2d 436 (1975); *see In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (determining that all persons accused of crime were protected against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the charged crime); *see also* 30 Am.Jur.2d, Evidence § 1172. Certainly, if venue were an element of a crime in Maryland, it would have to be proved beyond a reasonable doubt. Nevertheless, this Court is convinced that venue generally is not an element of a crime nor a fundamental right of an accused. Therefore, it need only be proved by a preponderance of the evidence.

## IV.

Before considering whether appellant proffered sufficient evidence at the venue hearing to warrant dismissal of the Baltimore County murder case, we shall determine what facts must be established at such a hearing. Appellant suggested that Md. Ann.Code art. 27, § 586A controlled the appropriate venue in this case. That provision requires that,

[i]f any person be feloniously stricken or poisoned in one county, and die of the same stroke or poison in another

---

**8.** Certain crimes identify venue as an essential element of the crime. For example, pursuant to Md. Ann.Code art. 27, § 158A, "fortune telling" is illegal in Caroline, Carroll, and Talbot counties. The State, in prosecuting a defendant under that statute, would be required to prove venue beyond a reasonable doubt.

county ... the offender shall be tried in the court within whose jurisdiction such county lies where the stroke or poison was given. . . .

She argued that common law restrictions on venue also apply. A more subtle, and serviceable, avenue of analysis begins with acknowledgment that the statute detailed above is merely a declaration of the common law. *See Stout v. State*, 76 Md. 317, 323, 25 A. 299 (1892). The common law venue for any crime is the county where the crime is committed, the *locus criminis*. *McBurney*, 280 Md. at 31, 371 A.2d 129; *Kisner*, 209 Md. at 529, 122 A.2d 102. *See 1 Wharton's Criminal Procedure* (13th ed. 1989 & 1996 Supp.) § 34. In Maryland, the common law of venue controls unless modified by statute. *See Kisner*, 209 Md. at 529–36, 122 A.2d 102.

 Distilling this overlap of statute and common law to its essential components, we discern that the resultant venue for murder trials, in the absence of other statutory edicts [9], lies where the felonious blows causing the victim's death are struck. Venue does not ordinarily lie where the death occurs. Therefore, parties must demonstrate two facts in order to establish venue for a murder trial under both the common law and Md. Ann.Code art. 27, § 586A, i.e., the location where the felonious blows were struck and that those felonious blows caused the victim's death. Evidence bearing on these matters must first be produced by the criminal defendant and then proven by the State.

## V.

 The State may proffer another basis for proper venue. Pursuant to Md. Ann.Code art. 27, § 590:

---

9. Other such statutory constraints might be situated in the substantive text of statutory crimes or in other venue statutes such as Md. Ann.Code art. 27, § 586 *et seq.* (§ 587, person stricken or poisoned on Chesapeake Bay and dying in county or vice versa; § 588, crimes committed on Chesapeake Bay; § 589, crimes committed on steamboats, trains, buses, airplanes, etc.; and § 590, crimes committed on or near boundary lines of counties).

[A]ny person who may commit any crime ... on or at the boundary or divisional line between any of the counties in this State, or so near thereto or where the exact location of such a boundary is so uncertain as to render it doubtful in which county the offense was committed, then the county which first assumes jurisdiction by issuing process for the arrest and prosecution of the offender shall have jurisdiction to charge, present, indict, try, convict and sentence; and in such case it shall be only necessary for the State to establish the venue alleged in the information, warrant, or indictment, by proving that the offense was at or on the boundary of the county wherein the accused is being tried, or was so near thereto or the location of the boundary is so uncertain as to render it doubtful in which county the crime was committed.

This statute provides, under certain circumstances, that the State may prove venue by merely showing that the location of the crime is "doubtful". In practice, this statute often serves as an exception to other venue rules instead of an affirmative basis for venue. In order to gain relief under this statute, the State must prove:

1) the offense was committed at or on the boundary of the county wherein the accused is being tried; or

2) the offense was committed so near the boundary of the county wherein the accused is being tried so as to render the precise location *doubtful;* or

3) the location of the boundary of the county wherein the accused is being tried is so uncertain so as to render *doubtful* in which county the crime was committed.

The proponent of § 590 venue must also establish that the geographical subdivision in which the accused is being tried was the first to assume jurisdiction by issuing process for the arrest and prosecution of the accused.

In the instant case, neither party disputes that Baltimore County was the first to assume jurisdiction over the matter. Additionally, neither party contends that the felonious blows were administered on or at the boundary. Furthermore, we

note that the testimony of appellant's expert witness regarding the location of the boundary went unchallenged. Therefore, the only avenue for relief still viable for the State, under § 590, rests upon its demonstration that the offense was committed so near to the boundary so as to render it doubtful in which geographical subdivision the crime was committed.

We are faced with the prospect of determining the significance of a singular concept employed in art. 27, § 590 to determine if the State met its burden. In order to construe this statute, we must discern the definition of "so near [to the boundary so] as to render it doubtful in which county the crime was committed." Md. Ann.Code art. 27, § 590. This concept, as it is used in the context of this statute, cannot be given a precise definition. Our statute, unlike those enacted elsewhere [10], neglects to supply a specific definition in longitudinal terms. Under § 590, the closeness of the commission of the crime to the boundary supplies the requisite "doubt". The factual circumstances applicable to the case, however, affect the degree to which distance from the border generates doubt. We explain.

One such factual circumstance, affecting the doubt precipitating from close geographic proximity to the border, is the relative motility of the crime scene. For example, if a defendant were charged with selling an alcoholic beverage to an underaged person inside of a permanent structure just inches from, but definitely not encroaching over, the Baltimore County/Baltimore City line, that crime would not be committed so near the boundary so as to make the *locus criminis* doubtful. If the entire structure were established indisputably to be inside of Baltimore City, and all parties agreed that the sale occurred within the confines of the structure, the State could not benefit from the art. 27, § 590 venue exception.

On the other hand, a crime effected inside a passenger car traveling over a road spanning two counties, within a few

---

**10.** *See 1 Wharton's Criminal Procedure* (13th ed. 1989 & 1996 Supp.) § 36 and cases cited therein.

miles of the boundary, might be "near" enough to render the precise location "doubtful". For example, in *Martin v. State*, 113 Md.App. 190, 251–52, 686 A.2d 1130 (1996), this Court recently affirmed a trial judge's application of art. 27, § 590 venue. We decided it was "clear that the testimony and evidence never clearly identified where the offense[s] . . . were allegedly committed." *Id.* Nevertheless, the evidence adduced did establish that the defendant's felonious actions occurred within "several miles" of the county border. *Id.* This Court determined that "several miles" was near enough to make the exact location "doubtful" under art. 27, § 590. Specifically, the *Martin* case involved a sexual assault by a police officer upon a woman in a police cruiser. We concluded, based at least inferentially upon the motility of the crime scene, that

> the exact location of where these incidents took place was doubtful. It certainly is possible, based on the evidence presented, that the offenses occurred in Howard County, Montgomery County, or in both counties. Accordingly, we fail to find that the trial court committed any error in finding that § 590 applied to this situation, and that the evidentiary requirements were satisfied.

*Id.* at 251–52, 686 A.2d 1130.

Therefore, we conclude here that the State may prove venue by demonstrating, by a preponderance of the evidence, that the crime occurred so near to the boundary line as to render the precise location doubtful. How "near" the criminal acts must be to the border is a function of distance and the factual circumstances of each case. Again, the State must show this "doubt" by a preponderance of the evidence.

## VI.

Appellant did produce sufficient evidence regarding proper venue under Md. Ann.Code art. 27, § 586A. As stated above, appellant was required to produce some evidence that the felonious blows were struck in Baltimore City and that those blows caused the victim's death. Appellant provided the testimony of an expert witness through whom she established

the location of the boundary between the city and the county. Appellant also testified that she engaged the victim in a fistfight in Baltimore City. Furthermore, appellant asserted that the fistfight caused the victim to complain of shortness of breath. Finally, appellant testified that, while still in the city, the victim had a "slumped" posture and lacked a pulse.

Of course, appellant is not a medical expert, nor did she offer expert testimony regarding the cause of death. We conclude, however, that the temporal nearness of the fistfight and the victim's distressed condition is some evidence that the blows struck in the city caused the victim to expire. As a lay witness, appellant is qualified to offer opinion evidence, and testimony regarding reasonable inferences, if "rationally based on the perception of the witness." Md. Rule 5–701(1). She testified that she perceived the victim was dead. Therefore, appellant offered relevant evidence regarding the location of the blows that caused the victim's death. We conclude that she surmounted her burden of producing evidence of proper venue in Baltimore City.

## VII.

We now consider whether the State adequately responded and met its burden of proof. Again, the State was charged with proving, by a preponderance of evidence, that the felonious blows were struck in Baltimore County and those blows caused the victim's death. Art. 27, § 586A. If unable to prove those facts, the State could establish proper venue by demonstrating that the crime occurred so near to the boundary between Baltimore City and Baltimore County so as to generate a doubt concerning the geographic subdivision in which the crime was committed. Art. 27, § 590.

The State failed to produce any evidence of the location of the blows nor the cause of death which contradicted appellant's testimony. Of course, appellant's testimony may have lacked credibility in the eyes of the hearing judge as she arguably had motive to fabricate the testimony regarding venue. Impeaching her testimony, however, does not relieve

the State of its affirmative duty to produce sufficient evidence of proper venue. The State failed to prove art. 27, § 586A venue at the venue hearing.

■ Nevertheless, the State did generate sufficient doubt, pursuant to art. 27, § 590, to establish proper venue in Baltimore County. The State demonstrated that doubt by introducing the testimony of the police officer, through the use of the expert testimony offered by appellant, and during cross-examination of appellant. In fact, the judge's opinion clearly indicated that the court doubted the precise location of the lethal criminal acts because of their proximity to the boundary. For that reason, and because Baltimore County first assumed jurisdiction over the matter, we conclude venue was proper in Baltimore County pursuant to art. 27, § 590.

Neither party contends that appellant's expert erred in his determination of the boundary. The trial court, and the parties, apparently accepted that the fistfight occurred inside of an automobile, on a highway, and within a few miles of the boundary between Baltimore City and Baltimore County. Nevertheless, the trial judge, along with this Court, found the evidence adduced at the venue hearing doubt-laden. We explain.

The State offered the testimony of the police officer initially arriving at the location where the victim's body was discovered. His testimony clearly indicated that Ms. Harrison had wounds on her chest. This testimony could have been construed by the trial judge to be contradictory to appellant's testimony concerning the blood on the victim's chest. Appellant only admitted to a fistfight with the victim and to observing otherwise unexplained blood on the victim's chest. The judge could have rationally inferred that the blood appellant viewed on the victim's chest resulted from a bloody nose or other facial source. Therefore, the trial judge was faced with testimony regarding a fistfight near the boundary and other testimony, introducing ambiguity and doubt, regarding a corpse with chest wounds found in Baltimore County. In light of that, we conclude that the State generated sufficient doubt,

stemming from the proximity to the border, concerning the location of the felonious blows that caused the death. This doubt, and Baltimore County's initial assumption of jurisdiction, dictated proper venue pursuant to art. 27, § 590.

■■■ We further note that the time of death and the location of the body are relevant to the determination of venue. Appellant, in her argument to the trial court, stated that "[t]he issue . . . is where did the homicide occur, not where the death occurred . . . not where the body was buried, not where anything else happened. This is totally immaterial." We conclude, however, that evidence as to the location of the victim's body and the time of death do have limited probative value concerning the location of the delivery of the death-inducing felonious blows. In other words, the location of death or of the discovered body, although not dispositive of venue, does provide some insight into the location of the causative blows.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5–401. The body, in the instant case, was found in northern Baltimore County. Absent some other explanatory evidence, dumping a body deep inside a jurisdiction has at least some tendency to suggest that the causative blows were struck in the vicinity. Murderers, excepting the more industrious variety, are not likely to tour the countryside for more than an hour with a corpse in the front seat of a car in search of the perfect depository. We conclude, therefore, that the trial judge did not erroneously consider the time of death or the location of the victim's body in her determination.

## VIII.

Although appellant did not explicitly limit her venue argument, she limits the scope of her appellate analysis to her murder conviction. She similarly limited her argument before the trial court. She offered no evidence regarding the location

of the various elements of the robbery charge despite her burden to do so. Because appellant has twice failed to raise and argue improper venue regarding her robbery conviction, we shall not review it here. *See, e.g., Spencer v. State,* 76 Md.App. 71, 543 A.2d 851 (1988).

JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.